NINA MANSON, RESPONDENT, v. MAY DEPARTMENT STORES COMPANY, A CORPORATION, APPELLANT.—71 S. W. (2d) 1081.

St. Louis Court of Appeals. Opinion filed June 5, 1934.

*Joseph N. Hassett* and *Ernest E. Baker* for defendant.

*Barak T. Mattingly* and *Alva W. Hurt* for respondent.

BECKER, J.—This is an action for damages for personal injuries alleged to have been sustained by plaintiff as the result of plaster falling from the ceiling while a customer in the store of the defendant. The verdict resulted in favor of the defendant and against the plaintiff. The trial court thereafter sustained plaintiff's motion for a new trial and the defendant in due course appeals.

Plaintiff's amended petition alleged negligence generally, and the defendant's answer thereto was a general denial. Upon trial of the case however, the instructions given at the plaintiff's request submitted her case to the jury upon an issue of specific negligence.

Plaintiff's testimony tended to prove that on September 1, 1930, accompanied by a friend, she went to the store of the defendant company and that while she was in the infants' wear department, located on the fifth floor of defendant's building, and was leaning over a table examining some infants' rompers, plaster fell from the ceiling immediately above where she was standing, striking her on the head and shoulders, and that as a result thereof she had a miscarriage some three weeks later.

The testimony adduced on behalf of the defendant tended to show that some plaster finish, about the thickness of a blotter, had fallen from the ceiling as testified to by plaintiff, but that none of the plaster had fallen on any customer.

Defendant here on appeal urges that the trial court erred in sustaining plaintiff's motion for new trial because plaintiff was not entitled to recover against defendant under the evidence on the issues submitted to the jury by plaintiff's instructions, and because defendant's demurrer to the evidence should have been sustained. This point is not well taken.

Appellant would have us review the action of the trial court in passing upon the demurrer as the case stood after it had been submitted to the jury upon the instructions. This we cannot do. The action on the demurrer must be judged as at the time when offered by defendant, namely, at the close of the case and prior to the giving of any instructions to the jury. Plaintiff's amended petition proceeded upon the theory of *res ipsa loquitur*, and the defendant's answer was a general denial, and the court necessarily tested the demurrer in light of these pleadings and the evidence adduced at the trial. It was admitted that the defendant maintained the store and premises, and that on the day in question, at the place and at the

hour testified to by plaintiff, certain plaster fell from the ceiling. Plaintiff and another witness testified that some of the plaster fell upon plaintiff and caused her injury. In this state of the record plaintiff must be viewed as having made out a case under the *res ipsa loquitur* rule and the court properly overruled defendant's demurrer. [Kean v. Piano Co., 206 Mo. App. 170, 227 S. W. 1091, l. c. 1094; Garfinkel v. Dry Goods Co. (Mo. App.), 25 S. W. (2d) 122; Kuether v. Light & Power Co., 220 Mo. App. 452, 276 S. W. 105; McCloskey v. Kopler (Mo.), 64 S. W. (2d) 557.]

As for the contention that plaintiff failed to make out a case for the jury upon the issue of specific negligence upon which she submitted her case, that point is not well taken. What the situation might have been had the defendant rested upon its demurrer offered at the close of plaintiff's case without adducing any evidence on this point, and in that situation the plaintiff had submitted her case to the jury upon the issue of the specific negligence, is not before us.

Where defendant does not stand on its motion for a directed verdict offered at the close of plaintiff's case, and adduces evidence thereafter, the plaintiff is entitled to the benefit of any evidence thereafter adduced. [Miller v. Construction Co. (Mo. App.), 46 S. W. (2d) 948; O'Connell v. Kansas City (Mo. App.), 58 S. W. (2d) 802; Nicholson v. Ry. Co. (Mo. App.), 51 S. W. (2d) 217.]

Defendant did adduce testimony which aided plaintiff in making a case for the jury upon specific negligence. Defendant adduced testimony favorable to the plaintiff's case sufficient to make the question as to whether or not the defendant had actual or constructive notice of the condition of the ceiling which caused the plaster to fall, in time thereafter to have remedied the same and have avoided injury to the plaintiff by the falling thereof. Defendant's witness, Thomas A. Blair, its building superintendent, testified it was part of his duties to watch for and to make any necessary repairs. As to plaster falling from ceilings in the building, he testified that "he has never seen anything fall on that floor that looked any heavier than a finishing coat and that is very thin. . . . It looks like it might be lime and sand or plaster of Paris. It is white or at least it was originally. It is painted on the outside. . . . That stuff falling, in their building and most any building, it only happens in the summer months and it is a case of expansion and contraction and oftentimes you will see a white coat come off and there will not be a single crack. At least it will be just like pop corn. It doesn't happen so often. If they had a damp day and warm, that finishing coat is thin and it absorbs moisture and that has got to expand; something has to happen. . . . From the first of September on he never got any complaint of any condition up there which he could find upon investigation what caused this white coat to come off. All he knows is that sometimes the

white coat pops off. . . . He has his eyes on the walls and ceilings and places like that. He has a man named Green, a colored man, and he stays there until eleven o'clock and he goes over the main floor and the basement and then after that he goes over the other floors. They do that to guard against anything like that happening. During the summer months, Green inspects the plaster of the ceilings. That is the time they have trouble with the stuff popping off.''

On cross-examination this witness stated that during hot weather a certain amount of plaster comes off the ceiling in almost any building.

In addition to this testimony we find that Alonzo Green, a witness for defendant, testified that as part of his duties ''in the summer time, he inspects plastering in the building and relieves the two door men from eleven to one. He generally takes any plaster down that looks like it is cracked or anything wrong with it. He does not remember when he last inspected the ceiling on the fifth floor prior to September, 1930. He is on all floors most every day. The last time he inspected the plaster on the fifth floor prior to September 1, 1930, he did not notice anything wrong with the plaster on the ceiling. He doesn't know the date of his last inspection but he is there mostly once a day. He never noticed anything wrong with the plastering prior to September 1st. He saw the place where the white coating fell down. They picked around with a trowel to see that no loose plaster was left. . . .''

On cross-examination Green testified that ''they have had quite a few instances of plastering falling in the store. He spends an hour and a half every day in the summer in the morning looking at plaster where plaster might fall, and a careful inspection will show in advance if the plaster is going to fall. Sometimes it just bursts right on down. . . . Sometimes all of a sudden it gets damp and falls down. . . . He doesn't know how large a piece of plastering fell in the infants' wear department September 1, 1930. He saw a place two or three feet square. It is repaired now. . . .''

It thus appears that the white coating of the plastered ceilings in defendant's building had fallen on frequent occasions; that the falling thereof occurred more often during the summer months, and defendant employed a man whose special duty it was, during the summer months, to examine the ceilings in the defendant's building to determine by inspection thereof whether there was any plaster likely to fall, and that ''a careful inspection would show in advance if the plastering is going to fall;'' that the last time the inspector had inspected the ceiling on the fifth floor at the place where plaintiff testified the plaster had fallen upon her, he had found the ceiling apparently in good condition, but he was not able to state when it was

prior to September 1, 1930, that he had examined that part of the ceiling.

In light of this testimony it became a question for the jury to determine whether or not the defendant, in the exercise of ordinary care to have that part of its place of business which was open to the public who came therein as customers, reasonably safe, could have discovered the condition of the ceiling which resulted in the falling of the plastering upon plaintiff, in time to avoid its falling and injuring plaintiff, and failed to do so.

The record discloses that the trial court read instructions to the jury, two at the request of the plaintiff, seven at the request of the defendant, and one given by the court of its own motion, which instructions were taken by the jury with them when they retired to consider their verdict. It appears that instruction numbered two given at the request of plaintiff, which was the only instruction on the measure of damages, was stamped "refused 6/15/32" and under which appeared the signature of the trial judge. The stamping of this instruction "refused" over the signature of the trial judge is here urged by respondent as having been reversible error for which the granting of a new trial was warranted.

Our search has not brought to light any cases in this State where an error similar to this has been ruled. However in other jurisdictions the identical error has been held prejudicial. From the case of Terre Haute & Ind. R. R. Co. v. F. O. Hybarger, 67 Ill. App. 480, we quote the following:

". . . Another objection urged is that the court marked as refused an instruction asked by defendant and read it to the jury, and that the instruction so read by the court and so marked refused was taken by the jury with the other instructions which were given. The instruction referred to was upon an important branch of the case— the duty of the plaintiff to exercise due care in approaching the crossing, and it is not denied that it correctly stated the law upon that point. So the question is, what should be said of this, probably inadvertent, action of the court in marking as refused a correct proposition of law and giving it so marked to the jury. The other instructions taken by the jury were all marked given, and if the jury took the trouble to examine the instructions they must have discovered that while the others were marked given, this was marked refused, and it is presumable, at least, that they understood the court did not approve of this instruction. No other instruction covering the same point was given.

"It is impossible to say that the case of the defendant was not prejudiced by this action of the court. It could not be so said unless it were known that the jury did not discover that the instruction was so marked. This is not known."

The court accordingly ruled the error prejudicial and reversed the judgment and remanded the cause. In a like situation such error was held prejudicial in Musser v. Ry. Co. (Nev.), 299 Pac. 1020. [See also Williams v. Traction & Light Co. (Va.), 128 S. E. 732.]

Appellant calls our attention to the fact that this specific error was not set out in plaintiff's motion for new trial. This is true. Respondent seeks to overcome this objection under the rule that trial courts of general jurisdiction proceeding according to the course of the common law, have inherent control over every judgment during the term at which they were rendered, and a discretionary power to vacate the same for cause; and their action in the exercise of the discretion vested in them will not be disturbed by an appellate tribunal excepting for an abuse of such discretion or an arbitrary or oppressive exercise thereof. [Scott v. Smith, 135 Mo. 618, 34 S. W. 864; Roden v. Transit Co., 207 Mo. 392, 105 S. W. 1061; Copeland v. Ins. Co., 191 Mo. App. 435, 177 S. W. 820.] This rule, however, cannot be invoked in the instant case in that the record discloses that the trial court passed upon plaintiff's motion for new trial many months after the term at which the judgment had been rendered. It follows that the error in marking the damage instruction "refused" over the signature of the trial judge, upon the record before us, could not be invoked by the trial court as a ground for granting plaintiff a new trial, and plaintiff having failed to set this up in her motion for new trial, the point is not here for review.

The record does however disclose an error which in our view was prejudicial to the rights of the plaintiff and therefore a proper ground for granting plaintiff a new trial.

Belle Finley Slater, adduced on behalf of the defendant, testified that she was forelady of the infants' department located on the fifth floor, the department in which plaintiff testified that she had been injured by the falling of the plaster from the ceiling. She testified that she was present in the department when the first pieces of coating fell from the ceiling and that some ten minutes later there was a further falling of some additional pieces. During her cross-examination she was asked whether any plaster had fallen in this department prior to September 1, 1930. The defendant objected on the ground that the question was irrelevant and immaterial, which objection was sustained. Then out of the hearing of the jury plaintiff offered to prove by the witness that on three separate occasions prior to September 1, 1930, plaster had fallen from this ceiling in this department. Defendant made the same objection as before, which was again sustained. Plaintiff saved her exceptions.

The exclusion of this testimony was error. The rule is that evidence of facts or occurrences happening at a prior time are admissible if relevant to the issue and if a substantial similarity exists as to the

surrounding conditions. [39 C. J., sec. 1234, p. 1021; Charlton v. Ry. Co., 200 Mo. 413, l. c. 442, 98 S. W. 529; Habenheimer v. City of St. Louis, 269 Mo. 92, l. c. 103, 189 S. W. 1160; Golden v. City of Clinton, 54 Mo. App. 100; Goble v. Kansas City, 148 Mo. 470, 50 S. W. 84.] Testimony to the effect that the plaster had fallen on prior occasions from the ceiling at or near the spot where plaintiff testified she was injured would not bring into the case any collateral issue. Such testimony would be material to the issue in hand, and would have a direct bearing on the question as to whether or not the defendant had fullfilled its duty to exercise ordinary care with reference to the inspection of the condition of the ceiling. [See Sargent v. Fuel Co., 37 Utah, 392, 108 Pac. 928; Ingalls v. Oil Co., 176 Cal. 128, 167 Pac. 867.] The rejection of this testimony, under the circumstances, was error prejudicial to the plaintiff and was proper ground for the trial court to sustain plaintiff's motion for new trial.

We are, consequently, of the opinion that we ought not disturb the ruling below. The order granting a new trial is therefore affirmed and the cause remanded.

*Hostetter, P. J.*, and *McCullen, J.*, concur.