Willis J. McCleod and Anna McCleod, Plaintiffs-Appellees, v. Nel-Co Corporation, Defendant-Appellant.

Gen. No. 10,659.

Opinion filed May 15, 1953. Released for publication May 29, 1953.

KNIGHT, HAYE & KEEGAN, of Rockford, for appellant.

WILLIAMS, McCARTHY & KINLEY, of Rockford, for appellees; DAVID S. PADDOCK, of Rockford, of counsel.

MR. PRESIDING JUSTICE DOVE delivered the opinion of the court.

While the plaintiffs were sleeping in a double bed in a room in defendant's hotel in the City of Rockford, which they had previously rented on a monthly basis, some plaster fell from the ceiling upon them. To recover the damages for the injuries alleged to have been sustained upon this occasion, this action was instituted.

Count one alleged that the defendant owned, operated and managed the Hotel Nelson in the City of Rockford; that the plaintiffs had rented a room in the hotel at $60 per month and were occupying the room which was under the exclusive management, control and possession of the defendant; that about one o'clock on the morning of July 21, 1949, after the plaintiffs had retired, and as the proximate result of the negligence of defendant, several large pieces of plaster fell on the plaintiffs as they slept, as a result of which Willis J. McCleod was injured. Count two made the same allegations and averred that Mrs. McCleod was injured. The answer of the defendant admitted that it owned, operated, managed and possessed the hotel and invited the public to occupy quarters therein for various periods of time at stipulated rental but denied all other allegations of the complaint. A jury trial resulted in verdicts in favor of the plaintiff, Willis J. McCleod, for $7,500 and in favor of Anna McCleod for

218

$500. After overruling motions for judgment notwithstanding the verdicts and for a new trial, judgment was rendered upon the verdicts and this appeal follows.

The record discloses that in the summer of 1949 Willis McCleod was fifty-five years of age, lived at Lake Villa, and was employed as manager of a Rexair branch office in Rockford. As such manager he sold and serviced vacuum cleaners and trained personnel. He and his wife traveled to and from Lake Villa and Rockford, occasionally staying overnight at the Nelson Hotel in Rockford. On July 19, 1949, in order to have a regular room in Rockford, they rented room 216 at the Nelson Hotel at a monthly rental of $60.

On the evening of July 21, 1949, the McCleods retired about ten o'clock. While asleep, about three hours later, they were awakened by a crash of plaster falling from the ceiling. Both Mr. and Mrs. McCleod were struck by the falling plaster. Mr. McCleod testified that he received a three-inch cut on his head and a three-inch cut on his left shoulder; that both cuts were bleeding, and he immediately called the desk and Dr. Bernard E. Bolotoff, the house physician, came and dressed the wounds but no stitches were taken. Both appellees testified they were covered with dust and blood and their room was filled with dust. Mrs. McCleod testified that she had an asthmatic condition and that dust was one of her allergies; that her arm and chest were bruised and after the house physician had cared for them and cleaned and dressed their wounds, they were assigned to another room, and later in the morning they went to the hospital at Dr. Bolotoff's suggestion and X-rays were taken but no fractures were found.

Dr. Bolotoff testified that immediately after the accident he examined appellees and found that Mr. McCleod had a cut on the left side of his head and an

abrasion on his left shoulder; that he cleansed the wounds with antiseptic and bandaged them; that at this time Mrs. McCleod was upset; that her left arm from elbow up and her left side from her ribs down to her thigh were bruised; that he does not recall when the X-rays were taken but he continued to treat both of them for a week or so, and they seemed to be improving satisfactorily; that by the application of heat their pain was relieved and there were no complications.

Appellees remained in Rockford for a month after the accident and then returned to their home in Lake Villa. On September 6, 1949, Mr. McCleod went to his family physician, Dr. Floyd Cannon at Waukegan, who testified that he was engaged in the general practice of medicine, knew appellees and had taken care of them over a period of years; that Mr. McCleod upon his first visit complained of pain in his left shoulder, left neck and left arm; that he treated him with short-wave applications, which afforded no relief, and then used electric heat applications which relieved his pain somewhat; that on November 2, 1949, X-rays were made which showed no fracture; that between September 6, 1949, and December 9, 1949, he treated him thirteen times; that he again treated him four times in August and November, 1950, three times in December, 1951, and three times in March 1952; that he found a scar over the shoulder blade area on the left side of the back; that Mr. McCleod was unable to lift his left hand above his head as well as he could his right hand, and that he diagnosed his trouble as traumatic neuritis or inflammation of the nerves due to injury, and expressed his opinion that the condition he found may recur as neuritis or arthritis.

Dr. Cannon further testified that Mrs. McCleod came to his office practically every time her husband was there and gave the same history and complained of

asthmatic attacks which she said were worse following the accident. Dr. Cannon stated that he had treated her previously and had X-rayed her chest in 1947; that she had an enlarged hypertensive type heart and after the accident he treated her and removed a small tumor, about the size of a walnut, over her left elbow which she did not have prior to the accident. The doctor testified that in his opinion the accident did not cause this tumor but was aggravated by it and that her asthmatic attacks were worse since the accident. For the services of Dr. Cannon, appellees were charged $225, and Dr. Cannon testified that he rendered them bills from time to time and that he kept no record separating the treatments to each and could not separate his charges but it should be about $112.50 for each. Dr. Bolotoff testified that his bill of $56 was submitted to appellant and paid.

The evidence further discloses that the portion of the hotel where room 216 was located was built about 1895; that the room was approximately 12 x 16 feet and the ceiling 16 feet high. Mr. McCleod testified that the area of the ceiling from which the plaster fell was three feet by six or seven feet and that the plaster was over an inch in thickness. The manager of the hotel, Mr. Hardwick, testified he measured this area the next morning following the accident and that the area from which the plaster fell was twelve inches by eighteen inches and the plaster was one-eighth of an inch thick. Mr. Hardwick further testified that he had been manager of the hotel since January 1949, and did not know whether the room had ever been replastered since it was built or not; that he inspected the entire hotel when he took over the management and made an inspection of room 216 every thirty days thereafter; that there were no cracks in the plaster on the ceiling prior to July 21, 1949; that he had never seen any cracks in the plaster and none had been reported

to him. It further appeared that the inspection made consisted of looking at the ceiling from the floor.

Appellee, Willis J. McCleod, testified that at the time of the accident his salary, expense account, and commissions averaged around $600 per month, which included his wife's services; that after the accident he was unable to continue with the Rexair Company; that he didn't have strength enough to take vacuum cleaners apart and put them back together, and that this weakness lasted for a year or so; that his left arm and shoulder were useless; that "if I do anything, even try to turn the wheel of my car I will get a pain in my shoulder, if I try to wind up the window on the door of the car I will get a pain, if I lift a pail of water I will get a sharp pain in my shoulder, anytime I try to raise my arm higher than my shoulder I get a sharp pain in my shoulder," and concluded by stating that at the time of the trial (July 14–15, 1952) this arm "is painful most of the time." Prior to the accident this appellee testified his health and arm had been very good. Mr. McCleod further testified that in September 1949, he bought an uncompleted cement block house in Waukegan for his son; that he worked upon this house, as a carpenter, for some time (doing all his work with his right hand), charging his son $1,000 for the services he rendered although he estimated the value of the work he did at $1,500. From August 1950, until April 1951, his earnings as a carpenter averaged $400 per month.

It is insisted by counsel for appellant that the trial court erroneously held that the doctrine of *res ipsa loquitur* applied; that the trial court also erred in giving certain instructions on behalf of the plaintiffs and erroneously refused to give an instruction offered by the defendant; that the verdicts are against the manifest weight of the evidence, and the verdict in favor of Willis J. McCleod is excessive.

■ Counsel for both parties state that there is no reported case in this State where a recovery has been sought under facts such as disclosed by this record and that our Appellate Courts have not had occasion to determine whether, under the facts and circumstances shown here, the doctrine of *res ipsa loquitur* applies. The author of the article on Innkeepers in 43 C. J. S. sec. 22 at pages 1177–8, citing, among other cases, *Pollard v. Broadway Central Hotel Corp.,* 353 Ill. 312 states that it is the duty of an innkeeper to keep his building and premises in a condition reasonably safe for the use of his guests, that he is obliged to use ordinary or reasonable care to accomplish this, that the guest is entitled to rely on, or assume, the performance of his duty and that a violation of such duty constitutes negligence.

■ In 38 Am. Jur. 1003, title "Res Ipsa Loquitur," sec. 306, it is said that this doctrine has had frequent application in cases of injuries resulting from falling objects and substances; that in order to invoke this doctrine in an action for injury from a falling object, the fall of the object must, according to common experience, be so unusual in occurrence, when due care is exercised by the defendant, as to carry inherent probability of negligence on his part. On pages 1004–5, sec. 307 of the same article it is said that it is usually held that a customer who is injured by the unexplained fall of an object while in a store causing injury to him, may invoke the doctrine of *res ipsa loquitur,* citing *Anderson v. McCarthy Dry Goods Co.,* 49 Wash. 398, 95 Pac. 325, 16 L. R. A. (N. S.) 931 and *Law v. Morris,* 102 N. J. L. 650, 133 Atl. 427, 46 A. L. R. 1108.

■ The author of the article on Negligence in 38 Am. Jur. 989, sec. 295, under the title "Res Ipsa Loquitur" says that "The conclusion to be drawn from the cases as to what constitutes the rule of res ipsa loquitur is that proof that the thing which caused the injury

223

to the plaintiff was under the control and management of the defendant and that the occurrence was such as in the ordinary course of things would not happen if those who had its control or management used proper care, affords sufficient evidence, or as sometimes stated by the courts, reasonable evidence, in the absence of explanation by the defendant, that the injury arose from or was caused by the defendant's want of due care." Citing among other cases *O'Rourke v. Marshall Field & Co.*, 307 Ill. 197, *Feldman v. Chicago R. Co.*, 289 Ill. 25, and *Hart v. Washington Park Club*, 157 Ill. 9, *Mabee v. Sutliff & Case Co.*, 335 Ill. App. 353, 404 Ill. 27. The requirement that before the rule can be applied it must appear that the instrumentality was under the management and control of the defendant does not mean or is not limited to actual physical control but refers rather to the right of control at the time. *Cruce v. Gulf, Mobile and Ohio R. Co.*, a Missouri case reported in 361 Mo. 1138, 238 S. W. (2d) 674, 677.

In *Dittiger v. Isal Realty Corp.*, 290 N. Y. 492, 49 N. E. (2d) 980, it appeared that Frank Dittiger was employed by a painting contractor to decorate a vacant apartment in defendant's building. A portion of the plaster ceiling of the apartment fell upon him and he was injured. In its opinion the court said that the case was one where mere proof of the happening, without any further proof of defendant's default, called for an explanation from the defendant; that the doctrine or rule of *res ipsa loquitur* applied and that the defendant failed to explain the accident in such a way as to overcome the case made out by plaintiff's proof of the sudden fall of the plaster. The court stated that, traditionally, the courts have used the rule of *res ipsa loquitur* in cases of injuries from falling objects; that most of such cases involve injuries to persons walking or driving on public streets but that

224

a number of cases, throughout the country, apply the rule of *res ipsa loquitur* to the fall of plaster from a ceiling. The court then concluded; "Our holding that this is a res ipsa loquitur case imposes on the owner no intolerable burden of absolute liability. It means only that defendant was put to the necessity of coming forward with an explanation of the accident so as to overcome the implications resulting from plaintiff's proof. Defendant was not foreclosed from showing the age of the plaster, and the probable duration of its useful life, or the method of its application, or of describing such inspection as had been made, or of pointing to facts showing that inspection was not reasonably called for."

In *Windas v. Galston and Sutton Theatres,* 35 Cal. App. (2d) 533, 96 P. (2d) 170, the plaintiffs while attending a performance in a theatre, were injured by the falling of a block of plaster from the ceiling. The trial court held that the doctrine of *res ipsa loquitur* applied and the Appellate Court in affirming that judgment cited and referred to cases from its own jurisdiction and also from New York, Ohio, New Jersey, Georgia, Texas and Missouri and concluded: "It thus appears that the trial court ruled in accordance with the weight of authority on the subject and in accordance with a decision of the District Court of Appeal of this State. The ruling of the trial court was both reasonable and just. When plaintiffs entered the theatre they were compelled to rely upon the operator of the theatre to discharge its duty to use reasonable care to see that the premises under its control were kept in a safe condition. Plaster does not ordinarily fall from a ceiling if proper care has been used to see that the ceiling is safe. The way was open to appellant to present an explanation of the occurrence and to dispel by evidence, if possible, the in-

ference of want of proper care which arose in favor of plaintiffs. The jury impliedly held that the evidence presented did not dispel this inference."

In *Bonita Theatre v. Bridges,* 31 Ga. App. 798, 122 S. E. 255, the plaintiff, an invitee, attending a show in defendant's theatre was injured by the falling of the overhead plastering. In sustaining the judgment of the lower court the court said that the falling of plastering in a theater is an unusual occurrence and that the doctrine of *res ipsa loquitur* applied and that the testimony introduced by the defendant with regard to the construction of the plastering was not such as to require a finding that the defendant was exonerated.

*Manson v. May Department Stores Co.,* 230 Mo. App. 678, 71 S. W. (2d) 1081 was an appeal from an order granting a new trial in an action for damages for personal injuries alleged to have been sustained by the plaintiff as a result of plaster falling from the ceiling while plaintiff was a customer in the store of the defendant in St. Louis on September 1, 1930. The jury returned a verdict in favor of the defendant and the trial court sustained plaintiff's motion for a new trial. In its opinion the court stated that it was admitted that the defendant maintained the store and premises and that upon the day in question at the place and at the hour testified to by her, certain plaster fell from the ceiling and that the plaintiff and another witness testified that some of the plaster fell on the plaintiff and caused her injury. "In this state of the record," said the court, "plaintiff must be viewed as having made out a case under the res ipsa loquitur rule . . . ." Upon the trial defendant offered evidence to the effect that it employed a man whose special duty it was to examine the ceilings and to determine whether any plaster was likely to fall; this employee did make such an inspection and the last time he so

226

inspected the ceiling, where plaintiff testified the plaster had fallen upon her, he had found the ceiling apparently in good condition but just when that inspection was made prior to September 1, 1930 the witness was unable to state. "In the light of this testimony," continued the court, "it became a question for the jury to determine whether or not the defendant, in the exercise of ordinary care to have that part of its place of business which was open to the public who came therein as customers, reasonably safe, could have discovered the condition of the ceiling which resulted in the falling of the plastering upon plaintiff, in time to avoid its falling and injuring plaintiff, and failed to do so."

In *Taylor v. Popular Dry Goods Co.*, 10 S. W. (2d) 191, the court of Civil Appeals of Texas affirmed a judgment for the defendant in an action brought by Herbert H. Taylor to recover damages for personal injuries which he alleged he sustained when some plaster fell from the ceiling of a department store, owned and operated by the defendant in the city of El Paso, the plaintiff being in the store on December 1, 1927 upon a proper mission. The court stated that the doctrine of *res ipsa loquitur* had been frequently applied in cases of injuries from falling objects and substances and that the doctrine applied in the instant case; that a case of negligence prima facie was presumptively established against the defendant by the falling of the plaster, unless explained but that this presumption of negligence arising in such cases is not conclusive. It appeared in this case that the plaster was applied directly to concrete and there was testimony that no adhesive had been found positive in character between concrete and plaster. The court stated that the use of plaster in buildings of all kinds is well known; that it is a matter of common knowledge that such plaster does not generally fall but will

227

sometimes fall from both walls and ceilings; that the building was built in 1916 of reinforced concrete; that this construction is recognized as of the best character for large public buildings; that it was a well built building and that the plaster was applied to the ceiling in the latest approved method, and that no cracks, looseness or defects in the ceiling had ever been noticed. "In this state of the evidence," said the court, "Whether the use of plaster for a ceiling was negligence was certainly an issue of fact. . . . The case is purely one of fact upon the issue of negligence as well as whether any substantial injury was sustained by the plaintiff."

In *Law v. Morris,* 102 N. J. L. 650, 133 Atl. 427 the plaintiff, a customer and while purchasing some dress material, was injured by a piece of plaster falling from the ceiling of the defendant's dry goods and notion store. In affirming a judgment for the plaintiff the court held that the doctrine of *res ipsa loquitur* applied and in the course of its opinion observed that the fall of a sizeable piece of plaster from a ceiling upon the head of a customer is not an occurrence which takes place in the ordinary course of things; that it is an unusual occurrence and an extraordinary happening which would not take place if the proprietor had exercised due care and was certainly an occurrence which called for an explanation from one who has control of the building.

In *Hotel Dempsey v. Teel,* 128 F. (2d) 673, it appeared that Mrs. Teel, one of the plaintiffs was a guest in defendant's hotel. While in her room and in an attempt to lower a shade at a window she pulled a cord attached to an ordinary window shade which operated upon a spring roller, set upon brackets affixed to the wall at the top of the window. As she did so the shade and roller tumbled down upon her causing her to fall. Seeking to recover for the injuries she there

received she brought this action. Affirming the judgment which she recovered in the district court, the Circuit Court of Appeals of the Fifth Circuit stated that under the law of Georgia an innkeeper owes to his patrons the duty to exercise ordinary care to afford them premises that are reasonably safe for use and occupancy; that the doctrine of *res ipsa loquitur* is recognized and 'applied in the jurisprudence of Georgia; that the falling of the window shade was not an occurrence ordinarily happening without negligence; that the proof affirmatively showed that the shade had not been touched by the plaintiff or her husband; that the defendant wholly failed to show that the occurrence was provoked by an external cause for which it was not responsible and that the case was a proper one for the application of the doctrine of *res ipsa loquitur* and that the inference of negligence which the jury elected to impute to the defendant was an inference exclusively within the province of the jury.

In *Mintzer v. Wilson*, 21 Cal. App. (2d) 85, 68 P. (2d) 374 it appeared that the plaintiff was a guest at the Hotel Von Dorn in San Francisco and while asleep about 4 o'clock in the morning in the bed in the room assigned to her, an area of the plastered ceiling weighing some thirty or forty pounds and about three or four feet in diameter, fell upon her causing severe and painful injuries. At the close of all the evidence the trial court directed a verdict for the defendant. In reversing this judgment entered upon this verdict the court said: "It is evident that the trial court erred in taking the present case from the jury for the reason that the case is obviously one wherein plaintiff was entitled to the benefit of the doctrine of res ipsa loquitur, which, in itself, established an inference of negligence." The court then stated that it is generally held that the doctrine of *res ipsa loquitur* applies in

229

cases of personal injuries caused by objects falling from buildings and other structures and then observed there would seem to be far more reason for the application of the doctrine inasmuch as plaster does not ordinarily fall from properly constructed ceilings and that here the relationship of the parties, being that of innkeeper and guest, charged the innkeeper, under California law, with liability for all injuries occurring to the guest from latent defects in the premises.

In *Morris v. Zimmerman*, 138 App. Div. 114, 122 N. Y. Supp. 900, the plaintiff was a guest over night at the defendant's hotel. While in the act of dressing in the morning he was struck on the head by a large piece of plaster, which fell from the ceiling inflicting the injuries for which he sought to recover. There was no direct evidence to explain the accident. At the close of the plaintiff's case, the trial court dismissed the complaint. In reversing that judgment and holding the *res ipsa loquitur* doctrine applied the court said: "Plaster does not ordinarily fall from properly constructed ceilings, unless the ceiling is out of repair or there is some adequate external cause. If there was an external cause in this case, the fair inference is that the defendants were responsible for it and they have it in their power to explain it. If the accident was due to the defective condition of the ceiling, the defendants in the exercise of that watchfulness which an innkeeper owes to his guests should have discovered it. The plaintiff only knows that he was hurt by a fall of the plaster. I can see no distinction between the fall of plaster upon a guest in a hotel and the fall of a wall upon a pedestrian in the street. See Mullen v. St. John, 57 N. Y. 566, 15 Am. Rep. 530. Both occurrences point to negligence, to a defective condition which the defendants in the exercise of the care which they owed to the plaintiff should have discovered, or to some ex-

ternal cause within the defendant's control. Under such circumstances, the rule applies, and the burden is cast upon the party having it within his power to explain the accident."

In *Thompson v. Cooles,* 37 Del. 83, 180 Atl. 522 relied upon by appellant and cited and referred to in *Dittiger v. Isal Realty Corp.,* 290 N. Y. 492, 49 N. E. (2d) 980, *supra* and also in the dissenting opinion in *Morris v. Zimmerman,* 138 App. Div. 114, 122 N. Y. Supp. 900, *supra,* the declaration alleged that the plaintiff, at the invitation of the defendant, was lawfully in a poolroom owned and operated by the defendant and while there was struck and injured by a piece of plaster falling from the ceiling. In holding this count did not state a cause of action the court said that the plaintiff sought to invoke the rule, *res ipsa loquitur,* in aid of this count and then stated that it was for the court to determine whether this rule ought to be applied to the situation presented. The court recognized that the rule had been applied by other courts in cases of injuries sustained from the falling of plaster from ceilings and referred to *Morris v. Zimmerman,* 138 App. Div. 114, 122 N. Y. Supp. 900, *Halterman v. Hansard,* 4 Ohio App. 268, where a guest in a hotel was injured by a fall of plaster from the ceiling of a room occupied by the guest. *Law v. Morris,* 102 N. J. L., 650, 133 Atl. 427, 46 A. L. R. 1108, and to *Taylor v. Popular Dry Goods Co.* (Tex. Civ. App.), 10 S. W. (2d) 191 where it appeared that the injured plaintiffs were customers in the stores of the defendant. In the course of its opinion the court said: "With deference to the courts which have seen fit to apply the rule (res ipsa loquitur) in actions of tort, to the mere fall of plaster from a ceiling causing injury, we are not convinced of the wisdom or necessity of its application to the situation disclosed by a count where the proof must be supposed to be no more than that

the building was owned and controlled by the defendant, and that the plaintiff, an invitee, was injured by the fall of plaster from a ceiling, with nothing to indicate its weakness or dangerous condition, such as cracks, bulging or sagging or of previous repairs thereto. . . . If, therefore, the doctrine be applied to the mere falling of plaster from a ceiling, resulting in injury, the result is that these circumstances alone are to be considered as necessarily involving negligence on the part of a defendant in the construction of his ceiling, either with respect to the materials used, or in the workmanship, or, in failing to perceive the weakened and loosened condition of his ceiling, and to repair it, although there was nothing in respect to its original construction, or in its condition thereafter, to cause a reasonably prudent person to suspect its dangerous condition." The court then quoted with approval from the dissenting opinion in *Morris v. Zimmerman,* 138 App. Div. 114, 122 N. Y. Supp. 900 *supra,* where it was said (p. 903) "Coming now to the accident in question, is this one in which from the nature of the accident it can be said that no such accident could ordinarily have occurred had defendants exercised the care that was required of them in maintaining this room in their hotel in a safe and proper condition for use. There was no evidence that this ceiling had ever been in a condition that required the defendants to repair it or of notice to the defendants that it was out of repair, or that there is any means by which a person can ascertain when a ceiling is about to fall. We have the bare fact that a ceiling fell. It was not an intricate machine which when maintained in order and properly operated cannot cause an injury, but an ordinary appliance in common use which under ordinary circumstances is entirely safe. It was certainly as safe as the stairs in a house to which the public are invited, or to which the owner extends an

implied invitation, or any other appliance in such a house supplied for the common use of its tenants. . . . It is true that it is a most unusual thing for a ceiling to fall, but it seems to me that without some evidence as to what caused it to fall, or some evidence to show that its fall was the result of some failure of the inn-keeper to ascertain the fact that it was unsafe or of some indication that it needed repair, the case lacks the proof of negligence essential to a recovery. . . . I therefore cannot agree that the rule res ipsa loquitur justified the court in submitting this question to the jury."

In *Wadleigh v. Bumford,* 229 Mass. 122, 118 N. E. 265 also relied upon by appellant, it appeared that the plaintiff was a tenant of the defendant and was injured by the falling upon her of a part of the ceiling in the kitchen of her tenement. In sustaining excep-tions to a judgment rendered on the verdict of the jury in favor of the plaintiff the Supreme Judicial Court of Massachusetts stated that other than such inference as may be drawn from the fall of the plaster, no evidence was offered to prove either faulty com-position of the material used or unskilled and unwork-manlike application of the coating to the walls of the ceiling, nor was there any evidence to exclude the in-ference of the operation of other causes which might have produced the accident. In *Bechtel v. Franklin Trust Co.* [120 Pa. Super. Ct. 587] also cited and relied upon by appellant and reported in 182 Atl. 800, the superior court of Pennsylvania while recognizing that the doctrine of *res ipsa loquitur* had been applied by Appellate Courts in other jurisdictions in similar cases refused to do so where it appeared that the plaintiff was injured by falling plaster from the ceiling of a booth in the defendant bank which she had entered for the purpose of transacting business having leased from the bank a safety deposit box.

The conclusion arrived at by the Supreme Court of Delaware in *Thompson v. Cooles, supra,* and by the Pennsylvania Court in *Bechtel v. Franklin Trust Co., supra,* are not in accord with the cases from other jurisdictions herein referred to and are not in harmony with analogous cases in our own Appellate Courts. In *Berent v. Metropolitan Life Ins. Co.,* 279 Ill. App. 430 where a window fell from a building and injured a pedestrian and in *Kylavos v. Polichrones,* 316 Ill. App. 444 where glass in a vestibule broke and injured the plaintiff, our courts applied the doctrine which the trial court properly, we think, found applicable to the facts disclosed by this record. In *Wadleigh v. Bumford, supra,* the Massachusetts case relied upon by appellant the relationship of the parties was that of landlord and tenant and not innkeeper and guest and the same rule does not apply.

 In our opinion the trial court correctly held that, under the evidence found in this record, the doctrine of *res ipsa loquitur* applied and the court did not err in so instructing the jury.

 Counsel for appellant next insist that even if this doctrine applies the evidence introduced by the defendant to the effect that monthly inspections of the ceiling of the room occupied by appellees were made not only by the manager of the hotel but by other employees, was sufficient to overcome the inference of negligence established by that doctrine. Whether the evidence upon this question was or was not so sufficient was a question of fact which was submitted to the jury under proper instructions and by its verdict the jury found and determined this issue against the contention of appellant and we cannot say, as a matter of law, that the jury were not warranted in so finding. Whether the presumption arising from the application of this doctrine has been overcome or successfully rebutted is a question of fact. As said in *Roberts. v.*

*Economy Cabs, Inc.,* 285 Ill. App. 424, 428, 429; "Whether the maxim of *res ipsa loquitur* applies in a given case is a question of law, but whether the presumption arising when the maxim has been applied has been overcome by proof is a question of fact. The finding of that fact is for the jury."

In *Mayes v. Kansas City Power and Light Co.,* 121 Kan. 648, 249 Pac. 599, it appeared that the plaintiff was injured while viewing an American Legion parade in Kansas City, Missouri. He was standing on the sidewalk near an ornamental light post which had been installed by the defendant and whose duty it was to maintain it. Someone in the crowd yelled "look-out." Plaintiff looked up and saw a lamp globe falling toward him. He involuntarily threw his hand above his head and the lamp globe struck his hand causing serious injury. In sustaining a judgment for the plaintiff the court held that it was a proper case for the application of the doctrine of *res ipsa loquitur;* that the evidence disclosed that the lamp and fixture was such that ordinarily no injury would be expected from their use if carefully constructed and maintained; that when plaintiff's evidence showed the duty of the defendant to maintain the lamps, his own rightful use of the street, his injury from the falling globe with no act of his to cause it and nothing to indicate it was caused by third parties or *vis major,* he, the plaintiff, had produced evidence from which the jury might reasonably conclude there had been a lack of due care on the part of the defendant in its duty properly to construct and maintain the lamp and its fixtures. The court then concluded; "With this evidence in, defendant then undertook to show due care on its part in the erection, inspection and maintenance of the lamp and fixtures. It was clearly the function of the jury to weigh this evidence, together with all the evidence in the case tending to show defendant's due care, or

its lack of it, and determine whether or not the defendant was negligent in the manner in which it constructed and maintained the lamp and fixtures, and if such negligence was the proximate cause of plaintiffs' injury." In this case it appeared from the evidence offered on behalf of the defendant that no fault could be found with the design of the lamp or fixtures and that the lamp, fixtures and globe were substantial and suitable for the purpose intended; that careful and competent employees had installed, inspected and maintained the lamp; that a day or two before the parade its employees had taken the globes from the lamps, washed them, and put them back; that each globe was put in its proper place and fastened with the set screws provided for that purpose and the light bulb properly fixed inside of the globe and when so placed and fastened the globe could not get loose or fall, unless it was struck with something and broken loose and that the lamp and fixtures were inspected daily. While the court held that the defendant was not an insurer of the safety of those who use the streets it also held that, notwithstanding this evidence tending to show freedom from negligence on the part of the defendant, it was not error for the trial court to deny defendant's request for an instructed verdict.

The ninth instruction, the giving of which appellant complains, is as follows: "The court instructs the jury that the plaintiff may recover from the defendant under counts one and two, if you believe from the greater weight of the evidence and under the instructions of the court, that the plaintiffs, while in the exercise of due care for their own safety, were injured as alleged in the first and second counts of the complaint, and that such injuries arose from some instrumentality or agency within the exclusive control of the defendant and that the occurrence was under circumstances such as in the ordinary course of events

236

does not happen if due care is exercised in the management, operation and control of such agency or instrumentality; the fact of injury, under such circumstances being sufficient evidence alone to raise a presumption or inference of negligence on the part of the defendant. Such presumption or inference of negligence, however, is not absolute and conclusive, but is rebuttable by evidence to the contrary, which tends to show that the defendant was in the exercise of due care." Counsel insist that this instruction was not applicable to the case; that plaster is neither an agency nor an instrumentality; and that the instruction erroneously set out the law of presumptions. Instruction No. 5 informed the jury of the allegations of the pleadings and defined the issues presented to the jury. We do not think the instruction is subject to the criticism levelled against it. It allows the jury to determine whether the facts are sufficient to raise a presumption or inference of negligence and consider the sufficiency of the evidence offered to overcome any such presumption or inference. The instruction substantially states the correct rule and effect of the doctrine of *res ipsa loquitur* and the court did not err in so instructing the jury. We have considered the other instructions objected to and the omission of the trial court to give the instruction tendered by appellant which was refused. Considering all of the instructions we feel that the jury was properly and fully instructed and that the omission to give the tendered instruction was not reversible error.

 It is finally insisted that the judgment in favor of Willis J. McCleod is excessive. We agree. Counsel for appellant recognize the rule that the finding of a jury as to amount of damages will not ordinarily be disturbed on appeal. In this case this appellee was not permanently disabled. There were no fractures. He was struck by a piece of plaster result-

ing in two abrasions of the skin. Immediately after the happening a physician dressed these cuts, no stitches were required and went to another room and the attending physician testified that a week or so thereafter appellees were both getting along satisfactorily.

From a consideration of the entire record, we feel that this judgment is clearly excessive and unless appellee, Willis J. McCleod, files in this court a remittitur of $2,500 within twenty days after this opinion is filed, the judgment of the circuit court will be reversed and the cause remanded for a new trial. If such a remittitur is filed, the judgment as so reduced by said remittitur to $5,000 will be affirmed.

*Judgment affirmed as to Anna McCleod. As to Willis J. McCleod, judgment affirmed on remittitur; otherwise reversed and remanded.*