(No. 4615-

CHARLES M. KENNEY, ADMINISTRATOR OF THE ESTATE OF STEVE BOLF, Claimant, *vs*. STATE OF ILLINOIS, Respondent.

*Opinion filed March 16, 1956.*

COUTRAKON AND COUTRAKON, Attorneys for Claimant.

LATHAM CASTLE, Attorney General; C. ARTHUR NEBEL, Assistant Attorney General, for Respondent.

FEARER, J.

Claimant, Charles M. Kenney, Administrator of the Estate of Steve Bolf, deceased, filed this action on March 23, 1954, under the wrongful death statute, Chap. 70, Secs. 1 and 2, 1953 Ill. Rev. Stats.

On August 28, 1953, claimant was duly appointed by the Probate Court of Sangamon County, Illinois, Administrator of the Estate of Steve Bolf, who died on August 17, 1953. It is alleged in the complaint that the decedent left him surviving no widow or children, but did leave surviving him Andrew Bolf and Miho Bolf, brothers;

Marija Majnorie, sister; Matija Bolf, a daughter of a deceased brother; Mary Bolf and Hallie Bolf, daughters of a deceased brother, Nick Bolf, nieces; Tony Bolf, son of a deceased brother, Nick Bolf, nephew; and children of a deceased brother, Ivan Bolf, names unknown, his only next of kin.

The prayer for relief is as follows: (a) Medical expenses incurred in the amount of $273.85; (b) Funeral expenses in the amount of $809.40; (c) Loss of support to next of kin in the amount of $6,416.75; or a total recovery in the amount of $7,500.00.

Claimant alleges that on August 15, 1953 respondent, by and through the Department of Agriculture, State of Illinois, was holding its annual State Fair at the Illinois State Fairgrounds, Springfield, Illinois, as prescribed by law. On said date decedent paid his admission price to the Illinois State Fairgrounds as a pedestrian. Claimant contends it was the duty of respondent to keep and maintain the grounds at the Illinois State Fairgrounds in a good condition and proper state of repair, and to remove therefrom any dead trees, which might fall upon and injure pedestrians.

The charge of negligence alleged in the complaint is that respondent carelessly, negligently, and improperly suffered and permitted a dead tree to remain in a state of great decay and ruin at or near the southwest corner of a warehouse, which was just west of the Exposition Building in said Fairgrounds, and that this dangerous and unsafe condition existed for such a length of time that respondent had or should have had notice of its existence. Furthermore, as a direct result of the negligent and improper conduct of respondent at said time and place, and while decedent was walking beside or under

the said dead tree, a large limb, approximately ten inches in diameter, broke and fell from the tree, hitting and throwing decedent to the ground with great force, and inflicting severe injuries on him, from which he died.

There is the usual allegation that at all times heretofore and hereinafter mentioned in the complaint, plaintiff's intestate was in the exercise of due care for his own safety.

There is alleged that decedent was accustomed to contribute, and would have continued to contribute to the support of his next of kin, alleged and set forth in the complaint.

Certified copies of Letters of Administration are attached to and made a part of the complaint.

No answer having been filed by respondent, Rule 11, which provides that, if the respondent should fail so to answer, a general traverse or denial of the facts set forth in the complaint should be considered as filed, is applicable.

On October 7, 1954, a hearing was had in this cause at Springfield, Illinois before Commissioner Billy Jones. It was stipulated before trial that claimant's exhibit No. 3, being a Coroner's verdict rendered upon an inquisition into the death of Steve Bolf, certified to by W. C. Telford, Coroner of Sangamon County, under date of September 26, 1953, be received in evidence and made a part of the record in this case.

The Coroner's jury found that Steve Bolf met his death on August 17, 1953 at or about the hour of 11:10 A.M. (C.S.T.), as a result of numerous internal injuries accidentally received when a large tree limb broke and fell on him near the Exposition Building at the Illinois State Fairgrounds, located near the City of Springfield

in Springfield Township, Sangamon County, State of Illinois, at or about the hour of 5:30 P.M. (C.S.T.) on August 15, 1953.

As a part of respondent's case, there is also filed a Report of the Department of Agriculture, which was made by Alvin C. Bohm, Technical Adviser. Claimant offered one occurrence witness, a Mr. Emery Mathews, Jr., who testified that on the afternoon in question he attended the Illinois State Fair, and viewed the accident on the north hill of Happy Hollow. He was walking from the east going west when he heard the crack of a limb, and saw the limb of a tree fall on plaintiff's intestate. When he reached the man, the limb was lying on top of him, and with the aid of four or five other men the limb was lifted from the body of Steve Bolf. Mr. Bolf was unconscious at the time, and was removed to the hospital by ambulance. The limb, when it fell, made a large cracking noise. He estimated the size of the limb to be ten inches in circumference. He examined the limb, and found it to be dead. Shortly after the accident he returned to the Fairgrounds, and found that the tree in question had been removed, i.e., it had been cut down along with two or three other trees. On cross-examination, he testified that he saw Steve Bolf sitting under the limb when it fell. At that time he was facing in a southwesterly direction. The witness was about 150 yards to the east of Steve Bolf, right on top of the hill east of the Exposition Building, when his attention was attracted to the tree by the cracking noise. At the time of the accident there was no wind blowing, and he did not know what caused the limb to fall, except that it was dead. There were branches scattered around on the ground from the falling limb, but

there were few leaves on the branch that fell. He was unable to testify what kind of a tree it was.

Claimant called George Blessing, who qualified as a nurseryman and tree surgeon, and testified that he was familiar with the various diseases of trees, and the methods of treating them. He assumed that it was an elm tree from which the limb fell, but was not certain. Elm trees in Springfield and its vicinity had been affected with a disease, which caused them to die within a comparatively short period of time, and he had observed limbs falling from such trees for no apparent reason, other than that leverage and weight would cause them to fall. On cross-examination, he testified that he did not know the particular tree referred to, nor what kind of a tree it was. For example, an oak tree could be dead and still have leaves on it, as they carry over from season to season. If a tree stands long enough, it will eventually rot out with the disease. The illness or disease he referred to was a virus, which does not kill trees immediately, and some trees die very slowly. A healthy tree to begin with would stand much longer. He also testified that some elm trees would lose part of their leaves, and yet the tree would be perfectly alive. Sometimes the dropping of leaves is due to dry weather, and the health of the tree depends upon soil condition and fertilizers.

Charles M. Kenney, Public Administrator for Sangamon County, claimant, was next called as a witness. He testified that the decedent left neither wife nor children, father or mother, but did leave surviving him as his only heirs at law, brothers and sisters, and descendants of brothers and sisters. He testified as to the medical expenses, funeral bills, charges for cemetery lot, the total amount being the sum of $1,083.25. He estimated the

court costs to be $75.00, and attorneys' fees to be somewhere between $1,200.00 and $1,500.00. He was unable to testify that any of the brothers and sisters depended upon decedent for support.

Respondent called Bertram Moore, an electrician, who was working at the Fairgrounds on August 15, 1953. He testified he was employed by the Egizii Electric Company, and that he saw the limb fall. He stated that all of a sudden it snapped and floated down; that he did not hear the limb break, but did hear it smash when it hit the ground. The man, who was struck, was facing towards Happy Hollow. He testified that it was an elm tree, that it was alive and had leaves on it, but he was unable to explain what caused the limb to fall. He further stated that after the accident this particular tree, together with other trees in the vicinity, were cut down; but he could not remember when.

Wilbur Powell was next called by respondent. He testified he was an electrician, and was standing outside of the electricians' building at the time the limb fell and hit the decedent. His attention was first drawn to the tree by the snap of the limb, and he saw the limb, which was of a fairly good size, after it hit the ground. It made a crack like a rifle. He was unable to state what kind of a tree it was, and he also did not know what caused the limb to fall. He testified that it was a calm day, and he could not state whether the tree was dead or alive.

Respondent then offered in evidence the Report of the Department of Agriculture, signed by Alvin C. Bohm, and filed in this case on May 21, 1954 under Rule 16. The Report of the Department of Agriculture places the Department of Agriculture as the custodian of the State Fairgrounds, and the buildings thereon by virtue of

Chap. 127, Par. 40, Ill. Rev. Stats., 1953. The mainte-
nance of the Fairgrounds is supervised by the Division
of State Fair. The grounds cover approximately 366
acres lying just north of the City of Springfield. There
are 71 separate structures or groups of buildings ranging
from a permanent bandstand to the grandstand, which,
with bleachers, will seat approximately 10,200 persons.
Some of the structures, such as the Illinois Building,
which houses the general offices of the Department of
Agriculture, are used the entire year. There are several
miles of streets, roads and sidewalks interlaced through-
out the various parts of the grounds, and the state em-
ploys a maintenance crew on an annual basis. In 1953, the
Illinois State Fair was held between the dates of August
14 and August 23. During the Fair a large number of
persons were employed by respondent for the purpose
of keeping the State Fairgrounds in a good condition
and in a proper state of repair, which included the timber
and trees located thereon. Whenever trees or timber on
the ground became dead or decayed, and a threat to the
safety of persons coming under said trees, they were
chopped or sawed down, and removed as a source of such
danger. The concluding paragraph of the Report is as
follows: "The Department of Agriculture, prior to the
time that a limb from a dead tree fell hitting said deced-
ent, Steve Bolf, as alleged by the claimant herein named,
had no knowledge of such condition, as to any trees on
the Illinois State Fairgrounds." Respondent contends
that, inasmuch as it did not have actual or constructive
notice of the defective condition of the tree, or, that the
condition had existed so long as to constitute construc-
tive notice, its agents and servants were not negligent,
and, therefore, respondent was not liable.

In the case of *Dreier* vs. *State of Illinois,* 21 C.C.R. 72, claimants were injured when a limb fell on their automobile, and it was proven that the limb had been in a cracked and defective condition for a period of time, and that the state had constructive notice of same. This Court has previously held that a Departmental Report is prima facie evidence of the facts set forth therein, but is not prima facie evidence of the conclusions set forth.

Claimant's evidence is not rebutted by the Departmental Report. It does, however, state that respondent kept a crew the year round for the purpose of inspecting and maintaining the buildings, trees and timber standing thereon for the safety of those attending the State Fair, and visiting the State Fairgrounds during the course of the year.

Inasmuch as Springfield and the surrounding area had been affected with a blight, which was killing elm trees, this in itself should have put the Department of Agriculture upon notice that a check should be made of all trees to see whether or not the elm trees located on the State Fairgrounds were dying from the blight.

The question of contributory negligence has not been raised, and rightfully so, as claimant's intestate was sitting in a place where he had a perfect right to be, and did nothing, which contributed to his own injury.

It was a calm, sunshiny day. There was evidence that the elm tree was rotten. There were leaves missing from it, which would give an indication that the tree was suffering from the blight testified to by the expert witness for claimant. Limbs of trees, ten inches in circumference, do not fall without some reason therefor. We believe we can safely conclude that this tree was affected,

that it was rotten, and that claimant's intestate did nothing to bring about the condition, inasmuch as the grounds, the trees growing thereon, and the buildings were under the control and supervision of respondent. This is a case where we can invoke the doctrine of res ipsa loquitur.

We cannot find a case where for no apparent reason a limb from a tree has fallen, and caused an injury; and, particularly, a case involving a limb of the size of the one in question, which had fallen when the wind was not blowing. This places an additional stress upon the question as to what caused the limb to fall. In such a case the question arises as to whether or not the diseased condition of the tree was apparent, and had existed for a period of time, and whether or not upon proper inspection its condition could have been determined, and the tree removed or treated, so that it would not remain as a hazard to those who visited the Fairgrounds. We are cognizant of the fact that respondent, through its agents and servants, did inspect the grounds, and was supposed to keep the grounds and the trees growing thereon in a safe condition for those attending the State Fair, as well as on other occasions. The condition existing in elm trees was very common in Springfield and the surrounding territory, and certainly respondent had knowledge of this. With this knowledge, inspection should have been made to determine whether or not the trees in question were diseased and rotten, and consequently hazardous.

The question as to this particular tree, as well as the surrounding trees, being rotten was answered by the fact that respondent, through its agents and servants, did remove the tree in question, and also several trees surrounding it, because of the disease that existed in the

tree, which caused the limb in question to fall on claimant's intestate.

It was the duty of respondent to keep the State Fairgrounds and the buildings thereon in a condition reasonably safe for the use of those attending the Fair, and it was obliged to use ordinary or reasonable care to accomplish this. Claimant's intestate was entitled to rely on or assume the proper performance of this duty. A violation of such a duty constitutes negligence.

The author of the article on negligence in 38 *American Jurisprudence* 989, Section 295, under the title "Res Ipsa Loquitur" says:

"The conclusion to be drawn from the cases as to what constitutes the rule of 'res ipsa loquitur' is that proof that the thing which caused the injury to the plaintiff's intestate was under the control and management of the defendant, and that the occurrence was such as in the ordinary course of things would not happen if those who had its control or management used proper care, affords sufficient evidence, or, as sometimes stated by the Courts, reasonable evidence, in the absence of an explanation by the defendant, that the injury arose from or was caused by the defendant's want of care."

The respondent has not offered any evidence, or explained why the limb fell, other than that it did not know the tree was in a dangerous and hazardous condition until after the accident. We are of the opinion that, from the testimony, the disease in the tree could have been determined had a proper inspection been made by respondent's agents. It was respondent's duty to make such an inspection in order to safeguard the patrons at the Fair, which fact was later recognized, as the diseased condition in other trees surrounding the tree in question evidently was apparent to respondent's agents after the accident.

In the case of *McCleod* vs. *Nel-Co Corporation,* 350 Ill. App. 216, the Court discusses in great detail the

doctrine of res ipsa loquitur. This was a case where plaster in a hotel room fell upon guests, while they were sleeping in bed, causing personal injuries. We quote from page 223: "In 38 Am. Jurs. 1,003, title 'Res Ipsa Loquitur', Section 306, it is said that the doctrine has had frequent application in cases of injuries resulting from falling objects and substances; that, in order to invoke this doctrine in an action for injury from a falling object, the fall of the object must, according to common experience, be so unusual in occurrence, when due care is exercised by the defendant, as to carry inherent probability of negligence on his part. On pages 1004-1005, Section 307, of the same article, it is stated that it is usually held that a customer, who is injured by the unexplained fall of an object, in a store, which causes injury to him, may invoke the doctrine of 'res ipsa loquitur', citing *Anderson* vs. *McCarthy Dry Goods Company*, 49 Was. 398, 95 Pac. 325, 16 L.R.A. (New Series) 931; and, *Law* vs. *Morris*, 102 N.J.L. 650, 1330 Atl. 427, 46 A.L.R. 1108."

In the case above cited, the defendant testified, as did its agents, that frequent inspections were made of the room where the plaster fell; that it was not apparent that there was any damage to the plaster, and that there was no explanation as to why it fell.

This is a situation similar to the one in the present case. But, there was no question in the hotel case but what the plaster was defective, or it would not have fallen; and the same is true in the case of a limb falling from a tree, which was found to be diseased and decayed, which condition caused the limb to fall.

Under the maxim "res ipsa loquitur", our courts have announced many times that where a thing, which

has caused injury, is shown to be under the management of the party charged with negligence, an accident is such as in the ordinary course of things does not happen, if the management uses proper care. The accident itself affords reasonable evidence, in the absence of an explanation by the party charged, that it arose from want of proper care.

It is clear from the record that the deceased did not leave a widow, descendants or parents. His next of kin were brothers and sisters, and descendants of deceased brothers and sisters. There is no evidence that the deceased contributed to the support of any of his next of kin, or that anyone looked to him for such support, as no pecuniary injury has been shown, and this action is instituted by the personal representative of the deceased. The recovery is, therefore, limited under the provisions of Par. C of Sec. 2 of the Injuries Act, Chap. 70, 1953 Ill. Rev Stats.

This Court, therefore, finds that claimant is entitled to the sum of $900.00, and that attorneys' fees in the sum of $500.00 should be allowed, or a total award of $1,400.00.