(No. 38808.—

ROBERT METZ *et al.,* Appellants, *vs.* CENTRAL ILLINOIS ELECTRIC AND GAS COMPANY, Appellee.

*Opinion filed March 18, 1965.—Rehearing denied May 20, 1965.*

Berry & Simmons, of Rockford, for appellants.

Hyer, Gill & Brown, of Rockford, for appellee.

Mr. Justice Daily delivered the opinion of the court:

Robert Metz and Stella Metz, plaintiffs, brought suit in the circuit court of Winnebago County to recover from Central Illinois Electric and Gas Company for damage to their home caused by a gas explosion on March 18, 1962. Judgment was rendered on a verdict for plaintiffs in the amount of $14,200 but, upon review, the Appellate Court for the Second District reversed. (50 Ill. App. 2d 78.) Plaintiffs have been granted leave to appeal to this court.

The complaint filed consisted of two counts. The first was based on the theory of *res ipsa loquitur* and charged general negligence, whereas the second alleged specific acts of negligence. At the close of their evidence, plaintiffs elected to stand solely upon the *res ipsa* count, and the case was submitted to the jury upon that basis. However, in reversing the judgment, the Appellate Court held that the theory of *res ipsa loquitur* did not apply. This is the question which we are now called upon to decide.

The facts are largely undisputed. The residence itself, which plaintiffs purchased in 1951, is situated on the south side of Loves Park Drive, an east-west street in Loves Park. In 1948 the defendant had installed a gas main along the southerly side of this street at a depth of 46 inches. The main was of steel construction and was delivered to the job site in 40-foot lengths, which were then welded in place. In the summer of 1955 the city of Loves Park installed a water main along the northerly edge of Loves Park Drive and ran a water service pipe at a depth of approximately 60 inches from this main, under the street and gas main, to a shutoff valve or stub in front of plaintiffs' home. Shortly thereafter, another contractor engaged by plaintiffs installed a service pipe between this water shutoff valve and the residence itself. In making these water installations, both contractors dug near the gas main with a back hoe.

No further excavations were made until immediately after the occurrence when it was discovered that the explosion had resulted from a break in the gas main at a point near its intersection with the water service pipe, and the subsequent seepage of the escaping gas into the Metz residence. Eugene O'Malley, the local fire chief, testified that the gas main at that point was completely severed with the east half being about one inch higher in elevation than the west half. Clifford Brown, a neighbor who watched defendant uncover the main following the explosion, said the gas main looked as though you could push your thumb through it. Bill Naylor, defendant's foreman, described the main as "broken off" and "pulled apart about a quarter of an inch." William Bogdonas, defendant's welder who repaired the break, said the main was pulled apart about ¾ inch and that the bottom side of the main at that point was dented. It is agreed that plaintiffs sustained the damages alleged and that they were not themselves in any way responsible for the explosion.

When a thing which caused the injury is shown to be

under the control or management of the party charged with negligence and the occurrence is such as in the ordinary course of things would not have happened if the person so charged had used proper care, the accident itself affords reasonable evidence, in the absence of an explanation by the party charged, that it arose from want of proper care. (*Feldman* v. *Chicago Railways Co.* 289 Ill. 25; *Bollenbach* v. *Bloomenthal,* 341 Ill. 539.) This in essence is the doctrine of *res ipsa loquitur,* and its purpose is to allow proof of negligence by circumstantial evidence when the direct evidence concerning cause of injury is primarily within the knowledge and control of the defendant. (*Kylavos* v. *Polichrones,* 316 Ill. App. 444.) Like any other proof it may be explained or rebutted by the opposing party. And while there appears to be conflict in Illinois decisions as to whether the presumption or inference of negligence raised by the doctrine of *res ipsa loquitur* vanishes entirely when any evidence appears to the contrary, the more recent, the more studied, and the more just view is that the inference, or presumption, does not simply vanish or disappear when contrary evidence appears, but remains to be considered with all the other evidence in the case and must be weighed by the jury against the direct evidence offered by the party charged. (See: *Cobb* v. *Marshall Field & Co.* 22 Ill. App.2d 143, 154-155; Illinois Pattern Jury Instructions, No. 22.01, Comment, pp. 128-129; McCormick, Evidence, secs. 309, 311; Cleary, Handbook of Illinois Evidence, sec. 6.12, p. 79; Prosser, 20 Minn. Law Rev. 241.) Accordingly, we adopt the latter view insofar as *res ipsa* cases are concerned, and at the same time expressly overrule the contrary *dicta* in *Bollenbach* v. *Bloomenthal,* 341 Ill. 539, 542-543.

Whether the doctrine applies in a given case is a question of law which must be decided by the court, but once this has been answered in the affirmative, it is for the trier of fact to weigh the evidence and determine whether the circumstantial evidence of negligence has been overcome by

defendant's proof. (*Roberts* v. *Economy Cabs, Inc.* 285 Ill. App. 424; *McCleod* v. *Nel-Co Corp.* 350 Ill. App. 216; *May* v. *Columbian Rope Co.* 40 Ill. App. 2d 264.) Such determination of fact may be disturbed by a reviewing court only if contrary to the weight of the evidence. *Smith v. Illinois Power and Light Corp.* 297 Ill. App. 358.

Defendant points out that the gas main was situated under a public way and that the area was disturbed by the installation of the water system in 1955. It therefore concludes that the element of control essential to the *res ipsa* doctrine was missing in the present case. With this we cannot agree. The usual requirement that the accident-causing instrumentality must be under the exclusive control of the defendant doesn't mean actual physical control at the time of the accident, if the instrumentality or dangerous agency is one which it is defendant's responsibility to maintain at all times and which responsibility cannot be delegated by consent, agreement or usage. (*McCleod* v. *Nel-Co Corp.* 350 Ill. App. 216; *Cobb* v. *Marshall Field & Co.* 22 Ill. App. 2d 143.) In the present case the defendant owned and installed the main in question and was solely responsible for its maintenance. As Donald Nevins, the defendant's claim director remarked: "No one else uses the main. It is our pipe and is shared by no one else." For at least seven years prior to the explosion, no one disturbed the area or interfered with defendant's control in any way. Under these circumstances the defendant must be held to have had control of the instrumentality which caused the injury.

Gas is a dangerous commodity, and the corporation which undertakes to furnish such service must exercise a degree of care commensurate to the danger which it is its duty to avoid and must use every reasonable precaution in guarding against injury to the person or property of others. (*Masters v. Central Illinois Electric & Gas Co.* 7 Ill. App. 2d 348; 17 I.L.P. Electricity and Gas, sec. 1, p. 144.) Un-

like other instrumentalities which have been subjected to the *res ipsa* doctrine, such as a taxi-cab door, (*Roberts* v. *Economy Cabs, Inc.* 285 Ill. App. 424,) store elevator, (*Cobb* v. *Marshall Field & Co.* 22 Ill. App.2d 143,) falling plaster, (*McCleod* v. *Nel-Co Corp.* 350 Ill. App. 216,) rope, (*May* v. *Columbian Rope Co.* 40 Ill. App. 2d 264,) and a folding chair, (*Robinson* v. *Peoples Gas Light and Coke Co.* 327 Ill. App. 412,) a gas main is buried beyond the reach and interference of the general public, and the probability is therefore great that breaks therein are occasioned by defects in the pipes themselves or by improper utilization thereof, such as excessive gas line pressure, both of which are subject to the complete control of the utility. In the ordinary course of things gas explosions will not occur. When one does occur, an inference of fault is justifiable. Even though the gas company may in a particular instance be blameless, yet we believe that in view of its superior knowledge of the facts at hand and its responsibility to the community, it has the duty to come forward and make explanation. This is no more than the doctrine of *res ipsa loquitur* requires. Although all jurisdictions do not agree, we feel that the better reasoning has applied the doctrine to gas company cases. For example, in *Chattanooga Gas Co.* v. *Underwood,* 38 Tenn. A. 142, 270 S.W.2d 652, the Tennessee court applied the *res ipsa* doctrine where personal injuries had resulted from a gas explosion, and in *Manning* v. *St. Paul Gaslight Co.* 129 Minn. 55, 151 N.W. 423, involving a break in a service pipe installed by the gas company on the consumer's property, the *res ipsa* rule was followed. Although it amounts to dictum, since specific negligence was alleged, our own court in *McClure* v. *Hoopeston Gas and Electric Co.* 303 Ill. 89, indicated that the *res ipsa* doctrine could be applied to a gas explosion case. Under the circumstances, we believe the trial court properly concluded that, as a matter of law, this was a *res ipsa*

*loquitur* case so as to warrant its submission to the jury. Thus, the only remaining question is whether the verdict was against the manifest weight of the evidence.

To rebut the inference of negligence, defendant offered evidence to the effect that once a year a visual inspection was made of the vegetation covering the gas mains to determine if there was any wilting which would normally result from escaping gas. It should be noted, however, that the vegetation test itself is of no value during the winter months. Defendant also attempted to show that the break occurred at the point of intersection with the water pipe, thus inferring that the contractor installing the water system, not the gas company, was responsible for the break. To be weighed against this testimony, however, was the fact that the break itself was not limited to a hole at the bottom of the gas main where the damage inferably occurred but, according to the eyewitness, amounted to a complete severance of the main into two separate pieces, one of which was at a different elevation than the other. Since some seven years had elapsed since the water line was installed, it is difficult to believe that the break was occasioned by that installation. Furthermore, the water line installation was not an isolated bit of work performed solely for the plaintiffs' benefit, but involved the laying of the entire water main for Loves Park. A great number of homes were necessarily involved, and defendant must have been aware of these installations. In fact, Stella Metz's uncontradicted testimony was to the effect that she called the gas company and had them check the gas shutoff valve before the water pipe was covered. Surely this afforded the defendant ample opportunity to inspect the gas main for possible damage. As was said in *Aurora Gas Light Co.* v. *Bishop,* 81 Ill. App. 493; "They could not interfere with or prevent the city from building a sewer; but they had a right to and were bound to see that in restoring the earth to its place, their own pipes were properly supported, and if injured, to see that the injury

was repaired as soon as it could reasonably be done." It was for the jury to determine credibility, and upon these facts we cannot say that its verdict was against the manifest weight of the evidence.

Accordingly, the judgment of the Appellate Court for the Second District is reversed, and the judgment of the circuit court of Winnebago County is affirmed.

*Appellate Court reversed;*
*circuit court affirmed.*