JOHN E. IMIG *et al.*, Plaintiffs-Appellants, v. HARLEY W. BECK, JR., *et al.*, Defendants-Appellees.

Fourth District   No. 4—84—0827

Opinion filed September 16, 1985.—Rehearing denied November 13, 1985.

WOMBACHER, J., dissenting.

Knuppel, Grosboll, Becker & Tice, of Petersburg (Eldon H. Becker, of counsel), for appellants.

Tracy A. Smith, of Bloomington, for appellee Harley W. Beck, Jr.

G. Michael Prall, of Chesley, Wilson & Prall, of Bloomington, for appellee Raymond E. Burger.

JUSTICE SCOTT delivered the opinion of the court:

John E. and Margaret E. Imig commenced an action in the circuit court of Logan County against Harley W. Beck, Jr., and Raymond E. Burger to recover for injuries suffered in a collision between the Imigs' van and a car that was being towed by a wrecker owned by Burger and driven by Beck.

The case was tried by a jury. At the conclusion of the evidence the trial court allowed a motion of the plaintiffs to add a count of negligence based on the theory of *res ipsa loquitur* and to submit their case to the jury on alternate theories of specific and general negligence. The jury deliberated and returned a verdict for both of the

defendants and against both of plaintiffs and judgment was entered on the jury verdicts.

The plaintiffs filed a post-trial motion requesting the trial judge to enter a judgment notwithstanding the verdict in favor of the plaintiffs and to grant a new trial on the issue of damages only. The motion was denied, and it is from the order denying post-trial relief and the judgment on the jury verdict that the plaintiffs have taken this appeal.

The specific issue on appeal is whether the plaintiffs were entitled to have a judgment notwithstanding the verdict entered on a theory of *res ipsa loquitur* if the circumstances are such as to make the inference of negligence so strong when all of the evidence, viewed in its aspect most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on the evidence could ever stand.

On January 22, 1981, John and Margaret Imig drove in their van from their home in Mason City, Illinois, to McLean, Illinois, to visit their son Robert. At around 10 p.m. the Imigs decided to return home. Robert decided to follow his parents in his own van so that he could assist his parents with some work at their business which adjoined their home. It was a cold January night, but there was no ice or snow on the road.

Traveling west on U.S. Route 136, the Imigs could see a wrecker coming towards them on Route 136. After stopping at the intersection of U.S. Route 136 and Route 121, the Imigs proceeded on Route 136 at 50 to 55 miles an hour.

The wrecker, owned by the defendant Raymond Burger, was being driven by defendant Harley Beck, Jr. Mr. Beck's son Harley Beck III was a passenger in the wrecker. The Becks were towing a car from Pekin, Illinois, to Atlanta, Illinois. Both of the Becks had towed cars with the wrecker on numerous occasions. One and a half miles west of the intersection as the wrecker passed the Imigs' van Mrs. Imig looked over, saw people in the wrecker, looked back, and saw a glare of blue. The car being towed by the wrecker and the Imigs' van collided with enough force to tear the towed car in two. The Imigs were seriously injured. The only witnesses to the collision were the Becks, the Imigs, and their son Robert. Harley Beck III testified that his father had driven the wrecker in its proper lane of travel at the time of the accident. All of the witnesses testified that the Imig van had remained in its proper lane of travel. There was no evidence indicating that the Imigs were in any way negligent.

Officer Dale Marlow, an Illinois State trooper, determined from

his investigation of the scene of the accident that the point of impact between the towed car and the Imigs' van was in the westbound lane. There was some conflicting evidence about whether the stabilizer bar, which served to keep the towed vehicle tracking properly behind the wrecker, was missing a pin or had been welded properly. Both of he Becks testified that if the car being towed by the wrecker had been hooked up properly the car would not have crossed over into the westbound lane. Harley Beck III stated that the car had been properly hooked to the wrecker including the use of safety chains. He also stated that they had stopped shortly before the accident to check the towing mechanism and car and everything had appeared to be working correctly. In addition, he stated he did not sense any irregularity in the way the car was tracking before the collision. Neither defendant nor Harley Beck III could give any indication as to what caused the towed automobile to cross over into the westbound lane and collide with the Imigs' van.

■ *Res ipsa loquitur* literally means "the thing speaks for itself." (*Collgood, Inc. v. Sands Drug Co.* (1972), 5 Ill. App. 3d 910, 284 N.E.2d 406.) The doctrine of *res ipsa loquitur* allows the trier of fact to draw an inference of negligence from circumstantial evidence when direct evidence of the cause of the injury is primarily within the knowledge and control of the defendant. Like any other proof, it may be rebutted by the defendant. (*Metz v. Central Illinois Electric & Gas Co.* (1965), 32 Ill. 2d 446, 207 N.E.2d 305.) A plaintiff, to avail himself of the doctrine, must demonstrate that he was injured in an occurrence that would not have ordinarily occurred in the absence of negligence, by an instrumentality or agency under the control or management of the defendant, and under circumstances indicating that the injury was not due to any act or neglect on the part of the one asserting the doctrine. *Lynch v. Precision Machine Shop, Ltd.* (1982), 93 Ill. 2d 266, 443 N.E.2d 569.

■ The plaintiffs fulfilled the requirements necessary to create a presumption of negligence in *res ipsa loquitur*. First, the collision between the Imigs' van and the towed car was not one that would normally occur in the absence of negligence, since both the wrecker and the Imig van had remained in their proper lanes. Thus, the occurrence itself is enough to raise the presumption of negligence. Second, the wrecker and the towed car were under the exclusive control and management of the defendants at the time of the accident. Third, there is no evidence that the Imigs in any way contributed to the cause of the accident.

■ Whether the doctrine applies in any given case is a question

of law which must be decided by the court, but once this has been answered in the affirmative, it is for the trier of fact to weigh the evidence and to determine whether the circumstantial evidence of negligence has been overcome by the defendants' proof. The inference may be strong, requiring substantial proof to overcome it, or it may be weak, requiring little or no evidence to refute it. (*Metz v. Central Illinois Electric & Gas Co.* (1965), 32 Ill. 2d 446, 207 N.E.2d 305.) If the defendant introduces no evidence, the jury may still in the proper case find for the defendant. *Lynch v. Precision Machine Shop, Ltd.* (1982), 93 Ill. 2d 266, 443 N.E.2d 569; *Erckman v. Northern Illinois Gas Co.* (1965), 61 Ill. App. 2d 137, 210 N.E.2d 42.

In *Erckman* the court held that a trial court may properly direct a verdict for the plaintiff under a theory of *res ipsa loquitur*. The court, in considering whether it would be proper to grant a directed verdict, stated:

"There may also be cases where the inference of negligence may warrant a directed verdict for the plaintiff. Prosser in his work on Torts (2d ed. 1955), at page 212, states: 'There are cases, however, such as that of the human toe in the plug of chewing tobacco, or the collision of railway trains trying to run on the same track, where the inference of negligence is so clear that no reasonable man could fail to accept it; and in such cases, if the defendant offers no explanation, a verdict should be directed for the plaintiff. In other words, the procedural effect of a res ipsa case is the matter of the strength of the inference to be drawn, which will vary with the circumstances of the case.' " *Erckman v. Northern Illinois Gas Co.* (1965), 61 Ill. App. 2d 137, 146, 210 N.E.2d 42, 46.

The *Erckman* rationale was adopted in *Collgood, Inc. v. Sands Drug Co.* (1972), 5 Ill. App. 3d 910, 284 N.E.2d 406, which held that a plaintiff was entitled to a directed verdict in *res ipsa loquitur* because the circumstances were such as to make the inference of negligence so strong that reasonable men could not have rejected it. The *Collgood* court found that the defendants had not presented any evidence to suggest a theory of causation not involving their own negligence and that the plaintiffs had also eliminated other possible theories of causation.

In the case before us, the evidence is much the same. Indeed, the Becks admitted that if the car had been properly connected to the wrecker and the equipment had functioned properly the car would not have swerved over into the westbound lane. Moreover, the defendants could not explain why the car swerved over into the westbound lane.

Just like two trains trying to travel down the same track, two cars, in this case one of them being towed by a wrecker, which try to travel in opposite directions on the same side of the road indicate negligence on the part of the defendants that would warrant a directed verdict if they fail to offer an explanation.

■ While we agree with the rationale of *Erckman* and *Collgood* that in the proper case a plaintiff may be entitled to a directed verdict under a theory of *res ipsa loquitur*, the "reasonable man" standard applied in those cases was not correct. The proper standard of review was enunciated in the watershed case of *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504. In *Pedrick*, the court rejected the reasonable man standard (*e.g., Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513). The court then held that verdicts ought to be directed and judgments notwithstanding the verdict entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponents so overwhelmingly favors the movant that no contrary verdict on the evidence could ever stand. Thus, the standard used in *Erckman* and *Collgood* that a directed verdict should only be given in *res ipsa loquitur* when the circumstances are such as to make the inference of negligence so strong that reasonable men could not reject it is not correct. Therefore, a plaintiff should be entitled to a directed verdict or judgment notwithstanding the verdict on a theory of *res ipsa loquitur* when the circumstances are such that the inference of negligence is so strong that when all of the evidence, viewed in its aspect most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on the evidence could ever stand. We believe that the evidence so overwhelmingly proves that the plaintiffs' injuries were caused by the negligence of the defendants that no contrary verdict based on the evidence could ever stand.

The defendants asserted the evidence that the wrecker was properly equipped, had passed the proper safety inspections, and that on the night of the accident the car had been properly hooked to the wrecker, and that the mechanism and the towed car had been checked shortly before the accident, served to negate the inference of negligence on the part of the defendants. None of the evidence, however, directly addressed what caused the towed car to swerve into the westbound lane and collide with the Imigs' van. As stated in *Pedrick*, the presence of some slight adverse evidence does not impair the direction of a verdict. *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 505, 229 N.E.2d 504, 510; see also *Collgood, Inc. v. Sands Drug Co.* (1972), 5 Ill. App. 3d 910, 284 N.E.2d 406.

■■ In addition, the defendants' citations of *Brendel v. Hustava* (1981), 97 Ill. App. 3d 792, 423 N.E.2d 503, and *Kitsch v. Goode* (1977), 48 Ill. App. 3d 260, 362 N.E.2d 446, for the rule that a jury verdict should not be disturbed unless unreasonable, arbitrary, or unsupported by the evidence to argue that the order denying the plaintiffs' motion for a judgment notwithstanding the verdict was correct are applicable to this case. The cases are applicable, but not in favor of the defendants, because we hold that the jury's verdict was not supported by the evidence, since the evidence, viewed in its aspect most favorable to the defendants, so overwhelmingly favored the plaintiffs that no contrary verdict could ever stand.

Therefore, the trial court's order denying the plaintiffs' post-trial motion for a judgment notwithstanding the verdict is reversed, and a new trial should be granted the plaintiffs on the issue of damages only.

Reversed and remanded.

HEIPLE, J., concurs.

JUSTICE WOMBACHER dissenting:

The majority apparently believes that pure accidents cannot occur, but the jury in this case did so believe. I do also and must respectfully dissent.

In reversing the lower court, this court has taken the case on appeal from the denial of the plaintiffs' motion for judgment notwithstanding the verdict, and finds that the trial court should have directed the jury on the issue of liability.

The accident in this case has been elevated to the same level as human toes in plugs of chewing tobacco, colliding trains on the same track, and the proverbial mouse in cola bottles. I do not believe the accident in this case, unfortunate as it was, rises to that level. The lower court did not, nor did the jury—both of whom had the opportunity to hear and observe the evidence and the witnesses vouching for same.

While I agree with the law propounded by the majority, I disagree with its application to the facts. *Res ipsa loquitur* raises an *inference* of negligence on the defendants' part. It enables a plaintiff to get past a motion for a directed verdict by establishing a *prima facie* case. The inference can be overcome by defendants' proof. It is for the trier of fact to decide if this was done, not a reviewing court. *Moore v. Atchison, Topeka, & Santa Fe Ry. Co.* (1961), 28 Ill. App. 2d

340, 171 N.E.2d 393.

The majority states that these defendants failed to offer a satisfactory explanation of why the towed car swerved as it did. This is not the burden they face in a *res ipsa* allegation. Nor do they face a rebuttable presumption. They only have to rebut the *inference* of negligence. See E. Cleary & M. Graham, Illinois Evidence 64 (3d ed. 1979).

The majority say that defendants presented no evidence that addressed the question as to what caused the towed vehicle to swerve into the opposite traffic lane. I do not believe this is what constitutes the alleged negligence. This case hinges on whether defendants did all in their power before and during the transportation to keep the towed car from swerving or weaving.

The majority believes this accident was the product of negligence on Beck's part. However, the evidence presented seems to show that defendant, Harley Beck, did all that he could to make and keep the car secure. The majority calls this "some slight adverse evidence" to the inference of negligence. They feel that the evidence was such that the case should not have gone to the jury. However, this was direct evidence on the question of negligence. Therefore, the case was properly sent to the jury and not directed on the question of liability.

The jury believed that the evidence presented rebutted the inference of negligence. It is not unreasonable to find, as the jury did, that this accident was simply that, an accident, a freak occurrence. Thus, viewing the evidence most favorably toward the defendants, does the evidence so overwhelmingly favor the plaintiffs that no contrary verdict may stand? I do not believe so.

I see nothing to suggest that the jury misinterpreted the instructions. The majority must therefore believe the verdict was unreasonable. However, the jury is to decide what is reasonable; we are not to substitute our judgment for theirs, even if we would have decided the case differently. (See *Lynch v. Board of Education* (1980), 82 Ill. 2d 415.) That is, of course, unless the majority is *sub silentio* imposing strict liability on towing vehicles whose tow cross over the center line without explanation.