(No. 62387

CLAUDETTE DYBACK, Appellee, v. ARTHUR J.
WEBER *et al.*, Appellants.

*Opinion filed September 17, 1986.—Rehearing
denied December 1, 1986.*

234

Clayton P. Voegtle and Thomas A. Robinson, of Waukegan (Snyder, Clarke, Dalziel & Johnson, of counsel), for appellants.

Kerry A. Forman, Albert J. Salvi and Patrick A. Salvi, of Waukegan, for appellee.

JUSTICE WARD delivered the opinion of the court:

Claudette Dyback, the plaintiff, filed suit in the circuit court of Lake County against Arthur J. Weber and Francis E. Weber, d/b/a Weber Construction Company, following a fire that damaged her home. She alleged that the fire was caused by the negligence of the defendants in leaving a fuel-oil heater on the premises where they were making repairs and, alternatively, in a second count that the defendants were liable under the doctrine of *res ipsa loquitur*. The third count of the complaint alleged that the defendants had failed to perform repairs in a good and workmanlike manner. The trial judge, at the close of the plaintiff's case, directed a verdict in favor of the defendants on all counts under *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494. The appellate court, with one justice dissenting, affirmed the trial judge's action on the negligence count and reversed on the *res ipsa loquitur* count. (134 Ill. App. 3d 426.) No appeal was taken by the plaintiff on count III. We allowed the defendants' petition for leave to appeal (103 Ill. 2d R. 315).

The plaintiff hired the defendants, who are in the home-construction business, to make repairs on her home in Prospect Heights, after it had been damaged extensively in a fire caused by lightning. The second fire, which is the basis of this lawsuit, occurred about 3 a.m. on December 28, 1978. This second fire caused even greater damage than the previous one, and eventually the house was razed.

The plaintiff's house was unoccupied while it was being restored by the defendants and had only limited electrical service and was without gas service. The defendants used a portable tubed-shaped "salamander" fuel-oil heater in the area where they were working. One of the defendants, Arthur J. Weber, who was called as an adverse witness under section 2—1102 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—1102), testified that only one electrical outlet, located in the dining room on the first floor of the house, was working. He and Francis, his brother, would plug the heater into the live outlet and, using an extension cord, were able to move the heater from room to room. The Webers used fuel-oil cans to fill the nine-gallon heater but did not leave the cans on the premises. The Webers were at the house on December 27, 1978, the day before the fire, but had not used the heater that day because they worked only about one hour. Weber could not recall if he or his brother had unplugged the heater the last day they had used it but said it had been moved to the back bedroom on the first floor after working hours so that it could not be seen through windows in the front of the house. The evidence showed that the defendants used a set of keys provided by the plaintiff, who had instructed them to lock the house when leaving.

The record shows that after the second fire the plaintiff hired Russell & Associates to investigate the fire. Ken Schultz of the firm, after detecting the odor of ac-

celerants in the house, took four samples of substance found on the floors and one sample from the heater. A chemical analysis of the samples indicated the presence of naphtha, an accelerant, in the attic and of a fuel oil in the sample taken from the heater in the bedroom. No other accelerants were present in the three other samples taken from areas of the first floor. Schultz observed in his report, however, that the burn pattern he found on the first floor of the residence led from the front door to the bedroom and kitchen. He concluded that the fire had been set by some unknown person.

James Miller, a licensed public adjustor, testified as an expert for the plaintiff. He was qualified as an expert on causes and origins of fires and the valuation of losses produced by fires. Miller had inspected the plaintiff's house only in January 1980, more than a year after the second fire. His inspection was conducted solely from the exterior of the house. Although he conceded that he did not know the cause of the fire, he stated his opinion that the fire would not have occurred if the heater had not been on the premises. He also said, based on Schultz' report, that there were two separate and simultaneous fires, one in the attic and the other on the first floor. Miller also gave the opinion that the fire did not originate in the room in which the heater was located. Miller theorized that the reason the chemical analysis of the three floor samples taken by Schultz did not indicate the presence of accelerants was because the fuel oil had burned about 99.9 percent pure, leaving no hydrocarbon residue behind that would be detected in a chemical analysis. Miller concluded that the fire was not caused by arson because there was no indication of a forcible entry into the house. In reaching his opinions, he relied extensively on the investigation of Schultz, who died during the pendency of the lawsuit. He referred, too, to an investigation by the local fire department conducted al-

most immediately following the fire. That report con-
cluded that the heater was not the cause of the fire be-
cause it was not plugged into the electrical outlet, and
that the fire did not originate in the bedroom where the
heater was located.

The plaintiff's complaint of negligence was grounded
solely on the defendants' bringing the heater to the
house and leaving it there, rather than removing it at
the end of each workday. The plaintiff showed that the
heater could have been moved by one person with little
difficulty.

At the conclusion of the plaintiff's case, the trial
court granted the defendants' motion for a directed ver-
dict on all counts. The court stated that the opinion of
the plaintiff's expert was based on guess and conjecture
and held that the simple leaving of the heater in the
house did not constitute negligence.

The appellate court in its opinion, though the question
had not been raised in the trial of this case, stated that
one of the elements for invoking the *res ipsa loquitur*
doctrine has been abrogated by this court's adoption of
pure comparative negligence in *Alvis v. Ribar* (1981), 85
Ill. 2d 1. Although addressing the question is not neces-
sary under the disposition we make here, it seems appro-
priate and important to consider the question in the light
of differing appellate court decisions on the issue. The
*res ipsa loquitur* doctrine permits the trier of fact to in-
fer negligence based on circumstantial evidence, and in
our State the doctrine traditionally had required the
plaintiff to demonstrate three elements: (1) that the oc-
currence is one that ordinarily would not happen in the
absence of negligence; (2) that the defendant had exclu-
sive control of the instrumentality that caused the event;
and (3) that the occurrence was not caused by the plain-
tiff's own negligent acts or omissions. (*Spidle v. Steward*
(1980), 79 Ill. 2d 1.) Since this court's adoption of com-

parative negligence, the appellate court, in the fifth and first districts, has held that the element concerning plaintiff's freedom from negligence no longer need be proved because that proof is not required in other negligence actions by virtue of our holding in *Alvis*. (*Daniels v. Standard Oil Realty Corp.* (1st Dist. 1986), 145 Ill. App. 3d 363, 368; *Mileur v. Briggerman* (5th Dist. 1982), 110 Ill. App. 3d 721.) Two other recent appellate court cases included without discussion of the question the third element as a requirement under the doctrine. *Imig v. Beck* (4th Dist. 1985), 137 Ill. App. 3d 631, and *Curtis v. Goldenstein* (3d Dist. 1984), 125 Ill. App. 3d 562.

We consider that the appellate court here correctly concluded that a plaintiff's freedom from contributory negligence should no longer be a requirement in order to make out a *prima facie* case under the doctrine. At least five other comparative fault jurisdictions have considered the question and have decided that proof of a plaintiff's freedom from negligence is no longer required under *res ipsa loquitur*. (See *Tipton v. Texaco, Inc.* (1985), 103 N.M. 689, 712 P.2d 1351; *Cyr v. Green Mountain Power Corp.* (1984), 145 Vt. 231, 485 A.2d 1265; *Montgomery Elevator Co. v. Gordon* (Colo. 1980), 619 P.2d 66; *Turk v. H.C. Prange Co.* (1963), 18 Wis. 2d 547, 119 N.W.2d 365.) One of these jurisdictions—New Mexico—has a pure form of comparative negligence, as we adopted in *Alvis*, while the other four States operate under a modified form of the comparative fault doctrine. The jurisdictions that operate under a modified comparative fault doctrine, of course, bar recovery on negligence claims, and also now under *res ipsa loquitur* claims, where the plaintiff is found more than 50% negligent. In addressing the effect of pure comparative fault principles on *res ipsa loquitur*, the Supreme Court of New Mexico stated that "[t]he mere existence of concurrent negligence does

not preclude a particular finding of negligence of one or more tortfeasors through reliance on the *res ipsa loquitur* doctrine. Otherwise, 'we would effectively erect a complete bar to recovery in cases where a plaintiff must rely on *res ipsa loquitur* to establish a prima facie case of negligence. \*\*\* Such a result would be in direct contravention of the concept of comparative negligence.' " *Tipton v. Texaco, Inc.* (1985), 103 N.M. 689, 697, 712 P.2d 1351, 1359, quoting *Montgomery Elevator Co. v. Gordon* (Colo. 1980), 619 P.2d 66, 70.

The defendants argue that, since the plaintiff in a *res ipsa loquitur* situation is given the benefit of an inference of general negligence, it is appropriate to continue requiring the plaintiff to show his freedom from negligence. They argue that the doctrine, founded on an inference of general negligence, differs so significantly from specific negligence cases that comparative fault should not apply to the former. We disagree because "[t]he analysis, from the viewpoint of comparative negligence, focuses on whether a 'defendant's inferred negligence was, more probably than not, a cause of the injury \*\*\* though [the] plaintiff's [or third party's] negligent acts or omissions may also have contributed to the injury' " *Tipton v. Texaco, Inc.* (1985), 103 N.M. 689, 697, 712 P.2d 1351, 1359, quoting *Montgomery Elevator Co. v. Gordon* (Colo. 1980), 619 P.2d 66, 70.

Since this court has extended the principle of comparative negligence to other areas (*Coney v. J.L.G. Industries* (1983), 97 Ill. 2d 104 (products liability)), there has been scholarly comment that it is logical that those principles should apply to the *res ipsa loquitur* doctrine. (Polelle & Ottley, Illinois Tort Law 429 (1984); see also W. Prosser & W. Keeton, Torts sec. 39, at 254 (5th ed. 1984) ("[T]he advent of comparative fault should logically eliminate this element [plaintiff's freedom from negligence] from the doctrine, unless the plaintiff's negli-

gence would appear to be the sole proximate cause of the event, since comparative fault by its nature converts the plaintiff's contributing fault from its traditional function of barring liability into one of merely reducing damages").) This extension of comparative fault principles to *res ipsa loquitur* cases is consistent with our recent decision in *Casey v. Baseden* (1986), 111 Ill. 2d 341. We held there that a plaintiff in a comparative negligence case does not carry the burden of proving his freedom from negligence because "both logic and fairness dictate that the defendant, who stands to benefit from a showing that the plaintiff was negligent, should have the burden of persuading the trier of fact on that issue." (111 Ill. 2d 341, 346-47.) Thus, a plaintiff relying on the *res ipsa loquitur* doctrine should no longer be required to plead and prove freedom from contributory negligence.

The defendants contend that the appellate court did not apply the proper standard when reversing the trial court's order directing a verdict for the defendants on the *res ipsa loquitur* count. Specifically, the defendants argue that the appellate court did not consider the explanatory and contradicting evidence of arson, which it should have done in considering a motion for directed verdicts under *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494. The holding in *Pedrick* provides that a trial judge may direct a verdict "only in those cases in which *all of the evidence,* when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." (Emphasis added.) (37 Ill. 2d 494, 510). The directing of verdicts as a means of promoting efficient and expeditious administration of justice is proper where no substantial factual disputes exist. (37 Ill. 2d 494, 504.) Factual disputes presenting questions of credibility should be decided by a jury, not by a trial judge on a motion for a directed verdict. (*Spidle v. Stew-*

*ard* (1980), 79 Ill. 2d 1, 10.) When *res ipsa loquitur* is invoked the plaintiff bears the burden of proving all of its elements. Under the doctrine, the facts of the occurrence show *prima facie* the defendant's negligence if the plaintiff establishes (1) that the occurrence is one that ordinarily does not occur in the absence of negligence and (2) that the defendant had exclusive control of the instrumentality that caused the injury. When these elements are shown, the occurrence itself, under *res ipsa loquitur*, "affords reasonable evidence, *in the absence of an explanation by the party charged*, that it arose from want of proper care." (Emphasis added.) (*Metz v. Central Illinois Electric & Gas Co.* (1965), 32 Ill. 2d 446, 449.) A plaintiff need not conclusively prove all the elements of *res ipsa loquitur* in order to invoke the doctrine. He need only present evidence reasonably showing that elements exist that allow an inference that the occurrence is one that ordinarily does not occur without negligence. (*Spidle v. Steward* (1980), 79 Ill. 2d 1, 9; see also W. Prosser & W. Keeton, Torts sec. 39, at 250-51 (5th ed. 1984).) The inference that there was negligence does not disappear if the defendant simply presents direct evidence to the contrary, but the defendant's evidence will be considered with all of the other evidence in the case. *Metz v. Central Illinois Electric & Gas Co.* (1965), 32 Ill. 2d 446, 449.

The only ground for claiming negligence that the plaintiff alleged was that the defendants left the salamander heater in the plaintiff's house overnight, rather than removing it after each day's work. Without this, the plaintiff's argument continues, a fire ordinarily would not have occurred in an unoccupied house without gas service and with only limited electrical service. We consider the trial court correctly held that the plaintiff did not prove the first element of the *res ipsa loquitur* count—that is, that the fire ordinarily would not have oc-

curred in the absence of negligence. As other courts not surprisingly have concluded, fires frequently have causes other than negligence, as when lightning struck this plaintiff's house, causing the first fire, or when arson occurs. (*Allstate Insurance Co. v. Winnebago County Fair Association, Inc.* (1985), 131 Ill. App. 3d 225, 234 (*res ipsa loquitur* applicable only when the fact of the fire, plus surrounding circumstances, give rise to an inference of negligence); *Hahn v. Eastern Illinois Office Equipment Co.* (1976), 42 Ill. App. 3d 29, 32 (surrounding circumstances beyond the fire required to support the inference); see also *American Family Mutual Insurance Co. v. Dobrzynski* (1979), 88 Wis. 2d 617, 623-24, 277 N.W.2d 749, 752 (application of *res ipsa loquitur* is not appropriate where the accident was just as reasonably attributable to causes other than the defendant's negligence).) The plaintiff points to several circumstances in her case as supporting an inference of negligence: there was no gas service and limited electrical service, fuel oil was left in the heater, there was no evidence of forced entry, and it was her expert's opinion that fuel oil was an accelerant involved in the fire. When, however, all the evidence is considered on balance, as it should be under *Pedrick*, one does not reasonably infer that negligence caused the fire. Where only a weak inference of negligence can be drawn, little or no evidence is required to refute it. (*Metz v. Central Illinois Electric & Gas Co.* (1965), 32 Ill. 2d 446, 449; *Imig v. Beck* (1985), 137 Ill. App. 3d 631, 635 (applying the three traditional elements of *res ipsa loquitur*).) The explanatory and contradictory evidence—that arson was the cause, that a different accelerant, naphtha, was found in the house's attic, where there was a fire, that the heater was unplugged, that the defendants had left the house at least 15 hours before the fire occurred, and that the heater was in good working order—was to be considered on a

motion for a directed verdict.

Too, the plaintiff presented no evidence that it is the custom and practice in the housing-construction trade to remove heaters of the type here from the work site at the end of the workday. The plaintiff's expert, Miller, was qualified to testify as to origins and causes of fires, along with valuations of resulting losses, but he was not qualified to offer opinions on the duty of care owed by home-construction contractors' use and maintenance of heaters of the type here, and he offered none. An expert witness' opinion cannot be based on mere conjecture and guess. (*Hahn v. Eastern Illinois Office Equipment Co.* (1976), 42 Ill. App. 3d 29, 34; *Schwartz v. Peoples Gas Light & Coke Co.* (1962), 35 Ill. App. 2d 25, 30.) Miller offered no explanation for the presence of naphtha in the house's attic in relation to the fire caused in that area, said he had "no idea" what ignited the fire, and conceded that the heater did not leak. He conducted his investigation of the burned residence nearly 14 months after the fire. He neither went upon the premises nor examined the heater or the bedroom in which it was located. Concerning Miller's testimony generally, it should be kept in mind that testimony of a post-event inspection is inadmissible, absent a showing that the conditions inspected were unchanged in the interim, or at least substantially similar to the time of the occurrence. (*Canales v. Dominick's Finer Foods, Inc.* (1981), 92 Ill. App. 3d 773, 778; *Escher v. Norfolk & Western Ry Co.* (1979), 77 Ill. App. 3d 967, 972, *aff'd* (1980), 82 Ill. 2d 110; *La Salle National Bank v. Feldman* (1966), 78 Ill. App. 2d 363, 372.) Miller's testimony, based only in part on his own inspection and which referred to investigations performed by Schultz and the fire department, was filled with guesses of what he believed might have happened. Thus, we judge that the trial court correctly ruled that Miller's "expert" opinion was based on conjecture and

guess.

Plaintiff refers us to several decisions involving fires in which the *res ipsa loquitur* doctrine was held applicable, but all are distinguishable because there were other surrounding circumstances beyond the fire itself to support an inference of negligence. (*Schurgast v. Schumann* (1968), 156 Conn. 471, 242 A.2d 695 (the heater in question had been lighted by defendant's employees working on the house just prior to the fire); *Oakdale Building Corp. v. Smithereen Co.* (1944), 322 Ill. App. 222 (the fire occurred only 15 minutes after the defendant exterminator left the plaintiff's house); *Arado v. Epstein* (1944), 323 Ill. App. 194 (the defendant's employees were installing a sump pump in the basement of plaintiff's building when the fire broke out); *Aetna Insurance Co. v. 3 Oaks Wrecking & Lumber Co.* (1978), 65 Ill. App. 3d 618 (evidence that the defendant, while demolishing the building, failed to secure the building in an area frequented by vandals).) We consider that the trial court correctly held that the mere presence of the heater, without more, neither constituted negligence nor reasonably permitted an inference of negligence that would support the *res ipsa loquitur* count.

For the reasons stated, the judgment of the appellate court reversing the trial court's judgment as to the *res ipsa loquitur* count is reversed and the appellate court's judgment affirming the trial court's judgment as to the negligence count is affirmed.

*Appellate court affirmed in*
*part and reversed in part;*
*circuit court affirmed.*