(Nos. 62829, 62832 cons.—

JOHN E. IMIG *et al.*, Appellees, v. HARLEY W. BECK, JR., *et al.*, Appellants.

*Opinion filed December 19, 1986.*

G. Michael Prall, of Chesley, Wilson & Prall, and Tracy A. Smith, all of Bloomington, for appellants.

Knuppel, Grosboll, Becker & Tice, of Petersburg (Eldon H. Becker, of counsel), for appellees.

JUSTICE RYAN delivered the opinion of the court:

The plaintiffs, Margaret E. Imig and her husband, John E. Imig, filed a 12-count complaint in the circuit court of Logan County seeking damages from the defendants, Raymond E. Burger and Harley W. Beck, Jr., for injuries they sustained when their van collided with an automobile being towed by a wrecker owned by Burger and operated by Beck. The case was tried before a jury. At the close of all of the evidence, the court allowed the plaintiffs to amend the complaint and allege causes of action based on the theory of *res ipsa loquitur*. The jury returned a general verdict in favor of both defendants and against both plaintiffs. The appellate court, with one justice dissenting, reversed (137 Ill. App. 3d 631) and remanded for a new trial on the issue of

damages. We granted the defendants' petitions for leave to appeal (103 Ill. 2d R. 315(a)) and consolidated the causes for review.

The collision in question occurred about 10:15 p.m. on January 22, 1981, 1½ miles west of the junction of U.S. Route 136 and Illinois Route 121. Route 121 runs north-south, while Route 136 runs east and west. The weather at the time was clear and the pavement dry. The only witnesses to the collision were the defendant, Harley Beck, Jr., his son, Harley Beck III, the Imigs, and their son, Robert.

On the day in question, the Imigs drove their van from their home in Mason City, Illinois, to McLean, Illinois, to visit their son, Robert. Around 10 p.m., they decided to return home. John Imig was driving, and his wife was a passenger in the front seat. Traveling west on U.S. Route 136, the Imigs saw a wrecker with flashing lights approaching them. After stopping at the intersection of Routes 136 and 121, they proceeded west in the northern lane of Route 136 at 50 to 55 miles per hour. As the wrecker passed their van, Mrs. Imig looked over, noticed two people in the wrecker, looked back, and saw a streak of blue. The vehicle being towed by the wrecker apparently collided head-on with the Imigs' van, resulting in injuries to the Imigs and serious damage to their van.

The Imigs' testimony was corroborated by their son, Robert. According to his trial testimony, Robert was following his parents home in his own van. As the wrecker proceeded to pass his parents' van, an explosion occurred. Robert admitted, however, that he did not actually observe the towed automobile swerve into the path of the oncoming van. He also admitted that both the wrecker and his parents' van appeared to be in their proper lanes of traffic at the moment of impact.

Officer Dale Marlo, an Illinois State Trooper who in-

vestigated the accident, testified that, based on the location of the debris, he thought the collision occurred in the westbound lane of Route 136. Marlo further testified that the stabilizer bar, which served to keep the towed vehicle tracking properly behind the wrecker, appeared to be missing either a bolt or a pin.

Also called as a witness for the Imigs was Gary Specketer, who was hired to investigate the accident the following day. He testified that he found a 10-inch "hitch" pin on the shoulder of the southern lane of Route 136, 100 feet *east* of the accident.

Harley Beck III testified that he was a passenger in the wrecker driven by his father. According to his testimony, the Becks were towing a car from Pekin, Illinois, to Atlanta, Illinois. He testified that the car had been properly attached to the wrecker, including the use of safety chains. He further testified that they stopped one mile before the accident to check the towing mechanism and, in their opinion, everything appeared to be working correctly. He stated that he did not sense any irregularity in the manner in which the car was tracking before the collision. He also stated that the wrecker was in its proper lane of travel at the time of the accident.

Harley Beck, Jr., the driver of the wrecker, who was called as an adverse witness under section 2—1102 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—1102), testified that he had towed cars with defendant Burger's wrecker on numerous occasions. He stated that he repeatedly checked the car in the wrecker's rearview mirror, but noticed nothing unusual. He was unable to explain, though, what caused the towed automobile to cross over into the westbound lane and collide with the Imigs' van. He admitted, however, that if the car being towed by the wrecker had been properly connected, then it should not have crossed over into the westbound lane of traffic.

Raymond Burger, the owner of the wrecker, who was also called as an adverse witness under section 2—1102 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—1102), testified at trial that the wrecker was properly equipped, and in good operating condition without defects, at the time of the accident. He further testified that the wrecker had passed various safety inspections. He also noted that the wrecker was used since the accident. He acknowledged that the safety chains were sheared by the impact of the accident. He also indicated that the missing pin or bolt in question was not necessary, since the stabilizer bar was properly welded.

As noted, the jury returned a verdict in favor of both defendants and against both plaintiffs, and the court denied the plaintiffs' motion for a judgment notwithstanding the verdict and for a new trial on the issue of damages only. In reversing the circuit court, the appellate court majority concluded that the collision between the Imigs' van and the towed vehicle was one that would not normally occur in the absence of negligence, since both the wrecker and the Imig van had remained in their proper lanes of travel; that the wrecker and the towed car were under the exclusive control and management of the defendants at the time of the accident; and that there was no evidence that the Imigs in any way contributed to the cause of the accident. (137 Ill. App. 3d 631, 634.) Citing *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, the appellate majority reasoned that a plaintiff should be entitled to a directed verdict or a judgment notwithstanding the verdict on a theory of *res ipsa loquitur* when the circumstances are such that the inference of negligence is so strong that all of the evidence, viewed in its aspect most favorable to the opponent, so overwhelmingly favors the movant that no contrary jury verdict based on that evidence could ever stand. (137 Ill. App. 3d 631, 636.) Relying primarily on

the fact that the evidence offered by the defendants to negate the inference of negligence failed to directly address what caused the towed car to swerve into the westbound lane and collide with the Imigs' van, the appellate majority held that the jury's verdict was not supported by the evidence.

The defendants argue in this court that their failure to identify the cause of the accident is not an admission of negligence. The defendants maintain that *res ipsa loquitur* does not change the burden of persuasion, which remains upon the plaintiffs, and that the jury is free to accept or, as here, to reject the inference of negligence. In essence, the defendants argue that experience teaches that some things in life cannot be understood, that the accident involved in this case is one of them, and that the jury properly determined that the blame could not fairly be placed on the defendants.

The Latin phrase, *res ipsa loquitur*, which means nothing more than "the thing speaks for itself," is the offspring of a casual statement by Baron Pollack in the course of colloquy with counsel in *Byrne v. Boadle* (Ex. 1863), 2 H. & C. 722, 159 Eng. Rep. 299, a case in which a barrel of flour rolled out of the defendant's warehouse window and fell on a passing pedestrian. (See 3 J. Dooley, Modern Tort Law sec. 48.01 (1977); W. Prosser & W. Keeton, Torts sec. 39, at 243 (5th ed. 1984).) In its inception, the principle of *res ipsa loquitur* was nothing more than a rule of evidence, permitting the jury to draw from the occurrence of an unusual event the conclusion that it was probably the defendant's fault. Shortly after its origin, however, it became confused, in cases of injuries to passengers at the hands of carriers, with the aftermath of an older decision which had held that the carrier had the burden of proving that its negligence had not caused the injury. This intermingling of circumstantial evidence and burden of proof re-

sulted in a great deal of confusion, criticism, and disagreement among the courts as to the proper substantive application of the principle and its procedural effect. See W. Prosser & W. Keeton, Torts sec. 39, at 243-44 (5th ed. 1984); Restatement (Second) of Torts sec. 328D, comment a (1965).

Despite the confusion and the differences of opinion surrounding its procedural and substantive application, the principle of *res ipsa loquitur* is nevertheless accepted and applied by virtually all American courts and, in the great majority of jurisdictions, its application raises an *inference* of negligence from otherwise inexplicable facts and circumstances by allowing proof of general negligence through circumstantial evidence. (See *Metz v. Central Illinois Electric & Gas Co.* (1965), 32 Ill. 2d 446, 449; 1 S. Gard, Illinois Evidence, Rule 3:17, comment (2d ed. 1979); see also McCormick, Evidence sec. 342, at 804-05 (2d ed. 1972); Restatement (Second) of Torts sec. 328D, comment a (1965); 58 Am. Jur. 2d *Negligence* sec. 476 (1971).) To raise the factual inference of negligence, the plaintiff must demonstrate (1) that the agency or instrumentality causing personal injury or property damage was, at the time of the creation of the condition causing the injury or damage, under the management or control of the party charged with negligence and (2) that the accident occurred under such circumstances that in the ordinary course of events it would not have occurred if the party so charged had used proper care while the agency or instrumentality was under his management or control. (*Dyback v. Weber* (1986), 114 Ill. 2d 232, 238-42; *Lynch v. Precision Machine Shop, Ltd.* (1982), 93 Ill. 2d 266, 272; *Kolakowski v. Voris* (1980), 83 Ill. 2d 388, 394; *Spidle v. Steward* (1980), 79 Ill. 2d 1, 5; *Drewick v. Interstate Terminals, Inc.* (1969), 42 Ill. 2d 345, 348; *Metz v. Central Illinois Electric & Gas Co.* (1965), 32 Ill. 2d 446, 448-49; see 1

S. Gard, Illinois Evidence, Rule 3:17 (2d ed. 1979); Restatement (Second) of Torts sec. 328D(1) (1965); 28 Ill. L. & Prac. *Negligence* sec. 202 (1957); see generally B. Jones, Evidence sec. 3:99 (6th ed. 1972); McCormick, Evidence sec. 342 (2d ed. 1972); W. Prosser & W. Keeton, Torts sec. 39 (5th ed. 1984); 9 Wigmore, Evidence sec. 2509 (Chadbourn rev. ed. 1981).) When both elements are shown, "the [occurrence] itself affords reasonable evidence, in the absence of an explanation by the party charged, that it arose from want of proper care." *Metz v. Central Illinois Electric & Gas Co.* (1965), 32 Ill. 2d 446, 449.

The application of the doctrine in a given case is a question of law which must be decided in the first instance by the trial court. (*Spidle v. Steward* (1980), 79 Ill. 2d 1, 7; *Drewick v. Interstate Terminals, Inc.* (1969), 42 Ill. 2d 345, 349; *Metz v. Central Illinois Electric & Gas Co.* (1965), 32 Ill. 2d 446, 449; Restatement (Second) of Torts sec. 328D(2) (1965).) Once that decision is made, it becomes the function of the trier of fact to weigh the strength of the inference of general negligence. (*Drewick v. Interstate Terminals, Inc.* (1969), 42 Ill. 2d 345, 349.) The inference may be strong, requiring substantial proof to overcome it, or it may be weak, requiring little or no evidence to refute it. The weight or strength of such inference will necessarily depend on the particular facts and circumstances of each case and is normally a question of fact to be determined by the jury. See *Erckman v. Northern Illinois Gas Co.* (1965), 61 Ill. App. 2d 137, 146; W. Prosser & W. Keeton, Torts sec. 40, at 258 (5th ed. 1984).

The use of *res ipsa loquitur*, however, does not relieve the plaintiff of the burden of proving negligence by a preponderance of the evidence. That burden of proof never shifts to the defendant, except in the very limited sense that if the defendant offers no evidence to over-

come the *prima facie* case made by the plaintiff in reliance on the doctrine, he runs the risk that the jury may find against him. (1 S. Gard, Illinois Evidence, Rule 3:17, comment (2d ed. 1979); B. Jones, Evidence sec. 5:13, at 565-66 (6th ed. 1972); W. Prosser & W. Keeton, Torts sec. 40, at 258 (5th ed. 1984).) Moreover, this inference of negligence does not vanish or disappear entirely upon introduction of contrary evidence by the defendant. The defendant's direct evidence will be considered with all of the other evidence in the case, including the inference drawn from the circumstances of the occurrence. *Dyback v. Weber* (1986), 114 Ill. 2d 232, 242; *Kolakowski v. Voris* (1980), 83 Ill. 2d 388, 397; *Drewick v. Interstate Terminals, Inc.* (1969), 42 Ill. 2d 345, 349; *Metz v. Central Illinois Electric & Gas Co.* (1965), 32 Ill. 2d 446, 449; W. Prosser & W. Keeton, Torts sec. 40, at 261 (5th ed. 1984); Restatement (Second) of Torts sec. 328D, comment n (1965).

Because there was no direct evidence as to why or how the towed automobile and the plaintiffs' van collided, it became necessary for the plaintiffs to resort to the circumstantial evidence offered by the accident itself. Thus, we will assume, under the circumstances, that the circuit court properly concluded that this was a *res ipsa loquitur* case so as to warrant its submission to the jury. Applying the above *res ipsa loquitur* principles, however, we find that the appellate court majority erred in holding that the jury's verdict was not supported by the evidence.

As noted above, in the ordinary case the inference of negligence together with any rebuttal evidence creates a question of fact for the jury—it warrants, but does not compel, the jury to choose the inference of the defendant's negligence in preference to other permissible or reasonable inferences. (*Lynch v. Precision Machine Shop, Ltd.* (1982), 93 Ill. 2d 266, 274; *Drewick v. Inter-*

*state Terminals, Inc.* (1969), 42 Ill. 2d 345, 349; E. Cleary & M. Graham, Illinois Evidence sec. 302.2 (4th ed. 1984); McCormick, Evidence sec. 342, at 805 (2d ed. 1972); Prosser, *The Procedural Effect of Res Ipsa Loquitur*, 20 Minn. L. Rev. 241, 243-44 (1936); Restatement (Second) of Torts sec. 328D, comment m (1965).) Since the doctrine gives rise only to a permissive inference, in most cases a directed verdict for the plaintiff will not be appropriate, even where the defendant presents no explanation or rebuttal, because it must be left to the jury whether to draw the inference of negligence from the circumstances of the occurrence. However, as the appellate court majority correctly reasoned, in exceptional cases the plaintiff may be entitled either to a directed verdict or to a judgment notwithstanding the verdict because the unrebutted *prima facie* proof of negligence is so strong that all of the evidence, when viewed in its aspect most favorable to the defendant, so overwhelmingly favors the plaintiff that no contrary jury verdict based on that evidence could ever stand. (See, *e.g., Collgood, Inc. v. Sands Drug Co.* (1972), 5 Ill. App. 3d 910; *Erckman v. Northern Illinois Gas Co.* (1965), 61 Ill. App. 2d 137; *Moore v. Atchison, Topeka & Santa Fe Ry. Co.* (1961), 28 Ill. App. 2d 340; see generally McCormick, Evidence sec. 342, at 805 n.38 (2d ed. 1972); Annot., 97 A.L.R.2d 522 (1964); 58 Am. Jur. 2d *Negligence* sec. 525 (1971).) As Dean Prosser recognized:

> "[T]here may be occasional cases, such as those of the human toe in the plug of chewing tobacco, the collision of railway trains trying to run on the same track, and perhaps a rear end collision with a stationary vehicle, where the inference of negligence is so clear that no reasonable man could fail to accept it; and in such cases, if the defendant offers no explanation, a verdict should be directed for the plaintiff." W. Prosser & W. Keeton, Torts sec. 40, at 258 (5th ed. 1984).

Unlike in cases involving human toes in plugs of chewing tobacco, colliding trains on the same track, rear-end collisions with stationary vehicles, or even the proverbial mouse in a cola bottle, we are unwilling to conclude that the *prima facie* proof in this case is so convincing that the inference of the defendants' negligence is inescapable. Moreover, the conditions which Dean Prosser notes as authorizing a directed verdict for plaintiffs assume that no evidence was offered in opposition to the circumstantial evidence. That is not the case here.

The procedural effect of *res ipsa loquitur* is often misunderstood. As discussed in detail earlier, the evidentiary and procedural consequence of *res ipsa loquitur* in the ordinary case is not that of a rebuttable presumption but, rather, that of the creation of a *permissible inference* or deduction of negligence from the facts and circumstances of the case. This procedural effect was clearly explained by Professor Prosser in an article written 50 years ago. (See Prosser, *The Procedural Effect of Res Ipsa Loquitur*, 20 Minn. L. Rev. 241 (1936).) As evidence that these principles are still viable, they are now contained in the latest edition of Prosser's well-known work on torts. See W. Prosser & W. Keeton, Torts sec. 40, at 257 *et seq.* (5th ed. 1984).

Applying these procedural effects to the facts of our case, and summarizing what has previously been stated herein, we reach the following conclusions. The burden was on the plaintiffs to prove that the accident was caused by some act of negligence by the defendants. The burden of proof never shifted to the defendants. The plaintiffs chose to sustain their burden by relying on the inference to be drawn from the circumstances of the case. *Res ipsa loquitur* simply permits the drawing of an inference as in any other case of circumstantial evidence. It does not create a presumption of negligence. Both the

defendant owner of the wrecker and the defendant driver came forward with evidence which tended to show that they were not negligent. The defendants offered evidence to the effect that the wrecker was properly equipped to tow a vehicle, that the wrecker passed the proper safety inspections, that on the night of the accident the towed vehicle was properly attached to the wrecker, that both the towing mechanism and the towed vehicle were checked one mile before the accident, that the wrecker remained in its proper lane of travel, and that the stabilizer bar was welded together.

Contrary to the appellate court majority's reasoning, however, the defendants had no burden to prove how the accident happened, or that it happened from some cause other than their negligence. If they would have made such proof, then the inference of the defendants' negligence arising from the facts of the accident would have disappeared and the defendants would have been entitled to a directed verdict. Of course, here the defendants did not attempt to prove what caused the collision. They only attempted to show that their acts and conduct amounted to reasonable care. This evidence was not sufficient to destroy the inference of negligence so as to entitle the defendants to a directed verdict. Against this evidence, which showed that the defendants acted with due care, must be balanced any inference of negligence that could be drawn from the circumstances of the accident which the jury may have chosen to draw or to reject, and which would have weight only so long as reasonable persons could still draw it from the facts in evidence. (See W. Prosser & W. Keeton, Torts sec. 40, at 261-62 (5th ed. 1984); Prosser, *The Procedural Effects of Res Ipsa Loquitur*, 20 Minn. L. Rev. 241, 268-69 (1936); see also Restatement (Second) of Torts, sec. 328D, comments m & n (1965).) The fact that a 10-inch hitch pin was found on the shoulder of the road the next day, and

the fact that there was testimony that the stabilizer bar, after the accident, appeared to be missing a pin or bolt are of no significance. The hitch pin that was found was not identified as belonging to the stabilizer bar, and it was found 100 feet *east* of the point of impact, a location the wrecker could not have passed before the collision. Moreover, there was testimony that the missing hitchpin was not necessary, since the stabilizer bar had been properly welded.

In essence, this case involved the typical jury question where the jury was permitted, but not compelled, to draw an inference of negligence from the circumstances of the case which could be weighed against the evidence presented by the defendants of their due care. The jury struck the balance in favor of the defendants. Either the jurors chose not to draw the inference of negligence or they found that the circumstances of the case were not such as to present an inference sufficiently strong to overcome the evidence presented by the defendants of their due care. We cannot say that there was no evidence to support the verdict of the jury or that the inference of negligence to be drawn from the circumstances of the accident was so strong and so favored the plaintiffs that no contrary jury verdict in favor of the defendants could ever stand.

For these reasons, the judgment of the appellate court is reversed, and the judgment of the circuit court of Logan County is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*